The PEOPLE of the State of Colorado, Petitioner–Appellant, In the Interest of M.N., a Child,

And Concerning The District Court Within and for the Twenty–Second Judicial District of the State of Colorado, and the Honorable Grace S. Merlo, Judge Thereof, and D.N., and I.N., Respondents–Appellees.

No. 87SA240.

Supreme Court of Colorado, En Banc.

Sept. 12, 1988.

Rehearing Denied Oct. 11, 1988.

Dean J. Johnson, Dist. Atty., Karen Winchester Davis, Deputy Dist. Atty., Cortez, for petitioner-appellant.

Bob D. Slough, Cortez, for M.N.

VOLLACK, Justice.

The People appeal from the district court's dismissal of three delinquency petitions filed against the minor respondent-appellee M.N. in the Twenty–Second Judicial District. The petitions were based in part on activities during an ongoing narcotics investigation at Cortez High School in Cortez, Colorado.

### I.

The findings of fact made by the district court in its order and the testimony at the hearing on the motion to dismiss establish the following sequence of events. In September 1986 Deputy Sheriff Louis Dabdoub was working as an undercover drug enforcement officer at Montezuma–Cortez High School. At the high school, Dabdoub met a student named M.N. On September 17, 1986, Dabdoub was driving down Main Street in Cortez when he was flagged down by M.N. and his friend E.M. Dabdoub told M.N. that he was "looking for marijuana." M.N. said that if Dabdoub had thirty dollars, he knew where Dabdoub could buy marijuana. When the deputy responded that he was ready to buy marijuana, M.N. got into Dabdoub's car and directed him to the Circle K Store in Cortez. The deputy drove M.N. and E.M. to the Circle K and

gave M.N. thirty dollars with which to buy marijuana for him.

M.N. went inside the store and returned with an individual named David Echols. M.N. told Dabdoub that thirty dollars' worth of marijuana could be purchased from Echols. M.N. made the exchange with Echols and delivered the marijuana to the undercover deputy. When he drove M.N. home, Dabdoub gave some of the marijuana he had just purchased to M.N.[1]

One week later, the deputy telephoned the house where M.N. lived and asked to speak with him. When M.N. answered the phone, the deputy asked M.N. to go to Southwest Coach to steal tires and rims for him. M.N. indicated that he would not go if Dabdoub didn't drive, so Dabdoub picked up M.N. and his friend, E.M. at M.N.'s house. M.N. and E.M. brought a jack and tire iron with them, and Dabdoub drove them to Southwest Coach. Dabdoub waited while the two unsuccessfully attempted to remove tires from various vehicles. M.N. and E.M. also broke two car windows in their unsuccessful attempts to steal a car stereo. When M.N. and E.M. realized that their lug wrench did not fit and told Dabdoub "Let's just go" because we have "the wrong kind of lug wrench," Dabdoub responded, "No, go out and look at them and see if you can find some more tires." M.N. and E.M. returned, successfully removed three tires from one vehicle, and put the tires in Dabdoub's car. The three were stopped by police officers two blocks from Southwest Coach. Dabdoub was arrested along with M.N. and E.M., so the juveniles were not yet aware that Dabdoub was a law enforcement officer.

Two days later, Dabdoub approached M.N. at an arcade in Cortez and asked M.N. to help him buy more marijuana. M.N. said he could not because he had to go home; Dabdoub persisted and per-suaded M.N. to help him. Dabdoub drove M.N. first to a house and then to an apartment building. M.N. knew a woman who lived in the building, but said he did not know which apartment was hers. Dabdoub gave M.N. thirty dollars and instructed him to follow a man who was walking toward an apartment at the time. M.N. followed the man, arrived at the right apartment, and spent the thirty dollars on marijuana. M.N. gave the marijuana to Dabdoub, who in turn permitted M.N. to take some of the marijuana for himself.

Three petitions in delinquency were filed concerning M.N. Counsel for M.N. filed a Motion to Suppress and Dismiss, alleging that M.N. was denied due process and equal protection of the law under the United States and Colorado Constitutions. M.N. further asserted that the deputy sheriff had violated section 19–3–119(3), 8B C.R.S. (1986) (adult aiding and abetting a minor), and section 18–18–106(8)(b)(I), 8B C.R.S. (1986) (distributing, dispensing, or selling marijuana, or conspiring to do so).

At the hearing on the motion to dismiss, the district court ágreed with certain aspects of M.N.'s argument and held that the evidence, which was unrebutted at the motions hearing to dismiss because Dabdoub did not give his full testimony, required the following result:

> The evidence stands unrebutted by the People and shows that said *deputy sheriff did induce, aid or encourage M.N., a child, to violate the law* in each of the instances herein. Now the *child is being prosecuted for alleged violations of the law based upon evidence that would not have happened and would not exist but for said deputy's illegal and unlawful acts in violation of [section] 19–3–119(3), C.R.S.* These charges and the evidence in support thereof are tainted as fruit of the poisonous tree. Children have special laws to protect them from

---

1. Until this point in the proceedings, the facts were established at the hearing by the testimony of both M.N. and Dabdoub. At this point in the hearing, the trial court advised Dabdoub of his *Miranda* rights and warned him that "there is a ... Colorado law to the effect that any adult who induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order commits a class 4 felony and shall be punished as provided in section 18–1–105 C.R.S." Dabdoub stated that he did not wish to waive his *Miranda* rights and did not wish to continue testifying, and the hearing was concluded. As a result, the remainder of the court's factual findings were established through the testimony of M.N. only.

adults including law enforcement officers. *The deputy's conduct is outrageous and violates* fundamental standards of *due process* under Art. II, Section 25, Colorado Constitution, and the Fourteenth Amendment to the United States Constitution.

(Emphasis added). The petitions were dismissed.

The People appealed the district court's dismissal order to this court, asking that we reverse and remand the case for reinstatement of the petitions in delinquency.

## II.

The district court based the dismissal order on its factual findings that Dabdoub had engaged in outrageous conduct, ruling that the deputy sheriff's conduct was so outrageous as to deprive M.N. of due process of law, requiring dismissal of the petitions. The court also held that the deputy was guilty of aiding and abetting a minor in violation of section 19–3–119(3), 8B C.R. S. (1986), and that any evidence obtained was therefore inadmissible.

## A.

The United States Supreme Court has recognized the possibility that under certain circumstances, the conduct of law enforcement agents may be so outrageous as to violate a defendant's constitutional right to due process of law. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The Court held:

> [W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, ... The law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.

411 U.S. at 431–32, 93 S.Ct. at 1643 (citation omitted) (quoting *Kinsella v. United States*, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed. 2d 268 (1960)). The law enforcement conduct at issue in *Russell* was the government agent's providing to Russell "a legal drug which the defendants demonstrably could have obtained from other sources besides the Government." *Hampton v. United States*, 425 U.S. 484, 489, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976).

The Court applied *Russell* three years later in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), when it addressed Hampton's assertion of outrageous governmental conduct as a defense. In *Hampton*, a government informant "allegedly supplied to petitioner [a drug that] both was illegal and constituted the *corpus delicti* for the sale of which the petitioner was convicted. The Government obviously played a more significant role in enabling petitioner to sell contraband in this case than it did in *Russell*," but this role still did not rise to the level of outrageous governmental conduct. *Hampton*, 425 U.S. at 489, 96 S.Ct. at 1650. As a result, the Court explained that the defendant's remedy "lies solely in the defense of entrapment."

Colorado recognized the due process claim of outrageous governmental conduct in *Bailey v. People*, 630 P.2d 1062 (Colo. 1981). In *Bailey*, the defendant raised both the statutory entrapment defense and the due process defense "that the conduct of the C.B.I. agents in this case was so outrageous that it deprived them of due process of law." *Id.* at 1068. We rejected the due process argument as applied to the conduct of the C.B.I. agents, but noted with approval the following language in *Hampton:* " '[N]o matter what the circumstances, neither due process principles nor our supervisory power could support a bar to conviction in any case when the Government is able to prove predisposition.' " *Id.* at 1068 (quoting *Hampton*, 425 U.S. at 495, 96 S.Ct. at 1653 (Powell, J., concurring)); *see People v. Vandiver*, 191 Colo. 263, 268, 552 P.2d 6, 9 (1976) ("Absent outrageous conduct by the officers violating fundamental standards of due process, the focus remains on the defendant" rather than on the government agent's acts.); *see also People v. Morley*, 725 P.2d 510, 515 (Colo.

1986) (In a disciplinary proceeding against an attorney, "the undercover operation did not reach the level of outrageous or bad faith conduct necessary to support the sanction of dismissal or suppression.").

A number of federal courts have acknowledged this defense.[2] In *United States v. Cantwell*, 806 F.2d 1463 (10th Cir.1986), the Tenth Circuit Court of Appeals reviewed evidence that a government agent had approached the defendant with the idea of engaging in counterfeiting, but concluded that the evidence "in no way demonstrate[d] a due process violation." *Id.* at 1469 n. 4.

In *United States v. Salazar*, 720 F.2d 1482 (10th Cir.1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985), the defendant asserted the defense of outrageous governmental conduct "by arguing that the agents acted improperly in offering to sell the food stamps to defendant when 'all he was doing was "lawfully and peacefully minding his own business." ' " *Id.* at 1488. The Tenth Circuit Court of Appeals noted that it had "recently rejected a similar due process defense in a food stamp case where stamps were offered for sale by undercover agents in *United States v. Biswell*, 700 F.2d 1310, 1313–14 (10th Cir.1983)." 720 F.2d at 1488 (footnote omitted). The activities in *Salazar* were held not to constitute outrageous governmental conduct. *See United States v. Burrell*, 720 F.2d 1488, 1494–95 (10th Cir.1983) (same).

In *United States v. Spivey*, 508 F.2d 146 (10th Cir.), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975), the defendant argued that the government informant's conduct was "so outrageous that the subsequent prosecution constitutes a violation of the principles of constitutional due process." 508 F.2d at 148. The basis for this argument was Spivey's assertion that the informant "violated both federal and state criminal statutes by *possessing and distributing marijuana* and that

these violations by [the government informant] were essential to his success in 'setting up' the heroin sales made by the defendant." *Id.* at 149 (emphasis added). The court noted that the lawfulness of the government informant's activity alone does not determine whether there has been outrageous conduct.

The permissible outer limits of governmental involvement have been described by the Ninth Circuit Court of Appeals in *United States v. Gonzales*, 539 F.2d 1238 (9th Cir.1976), a counterfeiting case in which two government agents "were actively involved in purchasing ink and other supplies, as well as a functioning press. . . . They also prepared the photostatic negatives and participated in the operation of the press which produced the similitudes." *Id.* at 1239. The court rejected the outrageous governmental conduct defense and held:

It is not improper for law enforcement agents to infiltrate criminal rings and gain the confidence of the participants. Nor is it impermissible to supply some item of value toward the perpetration of the criminal enterprise, for "an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them." The involvement of the agents in this case did not constitute action *malum in se*, nor can it be said that they engineered and directed the criminal enterprise from start to finish. Only such extreme conduct could arguably constitute a due process violation. Appellants here can only complain that they were taken in by the agents' well practiced disguise.

539 F.2d at 1239–40 (citations omitted) (quoting *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)); *see United States v. McQuin*, 612 F.2d 1193 (9th Cir.), *cert. denied*, 445 U.S. 955, 100 S.Ct. 1608, 63 L.Ed.2d 791 (1980) (actions of FBI informant who told

---

**2.** *See, e.g., United States v. Szycher*, 585 F.2d 443, 447 n. 5 (10th Cir.1978); *United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir.1978); *United States v. Graves*, 556 F.2d 1319, 1324 (5th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct.

1485, 55 L.Ed.2d 516 (1978); *United States v. Quintana*, 508 F.2d 867 (7th Cir.1975); *United States v. Archer*, 486 F.2d 670, 676 n. 6 (2d Cir.1973).

the defendant that another agent would kill him if he did not go through with the planned robbery held not to be outrageous conduct); *see also United States v. Bowling,* 666 F.2d 1052 (6th Cir.1981), *cert. denied,* 455 U.S. 960, 102 S.Ct. 1475, 71 L.Ed.2d 680 (1982) (FBI informant entered a house with the defendant and assisted him in the burglary; held not to be outrageous conduct); *United States v. Brown,* 635 F.2d 1207 (6th Cir.1980) (FBI paid informant infiltrated a burglary ring and participated in forty burglaries; held not to be outrageous conduct); *United States v. Reifsteck,* 535 F.2d 1030, 1035 (8th Cir. 1976) (Even when "the actual printing of the [counterfeit] bills was done by the government agents," governmental conduct was held to fall "far short of violating fundamental fairness.").

Other states have also addressed this argument under their state constitutions. The Missouri Court of Appeals addressed similar conduct in *People v. King,* 708 S.W.2d 364 (Mo.App.1986), in which a police informant and his friend bought marijuana from the defendant and later smoked some of the marijuana they had purchased. The remainder of the marijuana was admitted into evidence and King argued "that a prosecution may not be based on criminal activity by law enforcement and that sponsorship of the illegal enterprise by the police requires suppression of evidence procured in consequence of such conduct." *Id.* at 366. The court rejected the defense of outrageous police conduct. *See State v. Hohensee,* 650 S.W.2d 268 (Mo.App.1982) (The defense of outrageous conduct is held to apply because the actual "break-in was accomplished by the government agents." *Id.* at 274. The significant distinction is that here, the defendant's only activity was to sit in his car, in a parking lot one-half block from the burglary site, serving as "look-out" for the three government agents who actually committed the burglary. Hohensee also opened the stolen safe after it had been moved into the undercover house.); *see also State v. Apt,* 244 N.W.2d 801, 802 (Iowa 1976) ("[W]e cannot accept the proposition that a paid informer's evidence is constitutionally inadmissible and a

prosecution is constitutionally barred on a showing that officers permitted an informer to use a controlled substance.").

*Compare Brown v. State,* 484 So.2d 1324, 1325, 1328 (Fla.Dist.App.1986), *cert. denied,* 492 So.2d 1330 (Fla.1986) (police officers in "sting" fencing operation who paid individuals to sell goods to the officers' fence, paid referral fees to customers, and told customers what types of stolen credit cards they would buy; held not to be outrageous conduct) with *State v. Glosson,* 462 So.2d 1082, 1084 (Fla.1985) (agreement "to pay an informant a contingent fee conditioned on his cooperation and testimony in criminal prosecutions violates constitutional due process").

Keeping these principles in mind, we must determine whether the trial court correctly held that the conduct of the deputy sheriff, as established by testimony at the hearing, was so outrageous as to violate M.N.'s due process rights.

"The question whether circumstances are demonstrated which would bar prosecution under due process principles is for the court." *United States v. Szycher,* 585 F.2d 443, 445 (10th Cir.1978). The district court was therefore acting within its discretion when it ruled on the outrageous governmental conduct issue. An asserted denial of due process must " 'be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.' " *Spivey,* 508 F.2d at 149 n. 2 (quoting *Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595 (1942)).

■ Based on the rulings of the United States Supreme Court, as well as this court's holdings in *Bailey v. People,* 630 P.2d 1062 (Colo.1981), and *People v. Vandiver,* 191 Colo. 263, 552 P.2d 6 (1976), it is clear that the district court erred in holding that the testimony at the hearing established that the defendant had made a showing of outrageous governmental conduct. As cases like *Hampton, Szycher, Cant-*

*well,* and *Salazar* indicate, "Government officers can, of course, employ appropriate artifice and deception to ferret out illegal activities." *Szycher,* 585 F.2d at 449. The conduct which gave rise to the petitions against M.N. was not so outrageous as to deprive M.N. of his due process rights, based on the cases discussed. We hold, therefore, that the district court's holding as a matter of the law that the charges must be dismissed as a result of due process violations arising from outrageous governmental conduct was erroneous and constituted an abuse of discretion.

### B.

The district court also entered a finding that the deputy sheriff had committed a class 4 felony in violation of section 19-3-119(3), which provides:

> (3) Any adult who induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order commits a class 4 felony and shall be punished as provided in section 18-1-105, C.R.S.

The judge interrupted Dabdoub's testimony at the motions hearing in order to advise him that he would be subject to prosecution under this statute because of his activities in the high school undercover drug investigation. The court stated:

> Mr. Dabdoub, before you go further in your testimony, I feel it's incumbent upon the Court to advise you that there is a law under Colorado law to the effect that any adult who induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order commits a class 4 felony and shall be punished as provided in section 18-1-105 C.R.S.
>
> Because of this, I would like to give you your *Miranda* warnings.

The court went on to advise Dabdoub of each of his *Miranda* rights, then asked: "And having these rights in mind, do you wish to waive these rights and continue to testify in this matter?" Dabdoub declined to waive his *Miranda* rights and terminated his testimony.

Later during this hearing, the judge explained to the district attorney and defense counsel that "I believe the testimony that we heard from the juvenile, as well as in reviewing in chambers the parts of Mr. Dabdoub's testimony, *I think there was either inducement, aiding or encouraging.*" (Emphasis added). The court further explained that "as long as the act is encouraged or induced by the police officer, then the officer must be aware of this section [19-3-119(3)]. There is no exception for police officers in the Children's Code, and as I told you, I went through this rather carefully to see if there were any exceptions and there are no exceptions, it just says 'any adult,' and that includes police officers." For the same reason, Dabdoub indicated that he would not testify at M.N.'s trial, which was scheduled to begin a few days later.

■ Unlawful activities performed by a government agent in the course of undercover law enforcement do not necessarily subject the officer to prosecution. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). The United States Supreme Court has recognized "the peculiar law enforcement tactics necessitated by the nature of drug-related offenses." *Spivey,* 508 F.2d at 148.

> [I]n drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must as a general rule, also be permissible. For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them. Law enforcement tactics such as this can hardly be said to violate "fundamental fairness" or "shocking to the universal sense of justice."

*Russell,* 411 U.S. at 432, 93 S.Ct. at 1643 (quoting *Kinsella v. United States,* 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268

(1960)). The district court erred in concluding, and in advising Dabdoub, that actions taken by him in his capacity as a law enforcement officer as part of an ongoing undercover investigation violated section 19–3–119(3).

■ It is the duty and role of the district attorney, not the judge, to decide whether justice requires that a particular individual should be charged with violating a criminal statute. A judge does not have the power to charge an individual with violation of a criminal statute such as section 19–3–119(3). *Miller v. People*, 102 Colo. 259, 78 P.2d 624 (1938).

The court told M.N. that "[b]ut for the acts of Officer Dabdoub, the Court, if it was trying your case, would have found you guilty, or that you had violated the law and that the petition in delinquency should be imposed.

"But, at the same time, the Court is taking into consideration this very specific statute, 19–3–119(3), that states, 'Any adult who induces, aids, or encourages a child to violate any federal or state law, county or municipal ordinance, or court order commits a class 4 felony and shall be punished as provided in section 18–1–105.'"

■ In the proceedings at bar, petitions in delinquency were filed against M.N. The undercover law enforcement officer who testified at the hearing had not been charged by the district attorney with a violation of section 19–3–119(3). Because Dabdoub had not been charged with a criminal offense by the district attorney, the officer's alleged violation of section 19–3–119(3) did not constitute grounds for dismissing the petitions against M.N.[3] For this reason, the trial court erred in ordering the petitions dismissed at the motions hearing, to the extent that it relied on its conclusion that Dabdoub's conduct constituted a criminal offense under section 19–3–119(3).

### III.

The outrageous governmental conduct defense should not be confused with "the traditional, nonconstitutional defense of entrapment," which is an affirmative defense defined by statute. *United States v. Spivey*, 508 F.2d 146, 151 (10th Cir.1975). The due process issue "is, of course, interwoven with the entrapment defense." *United States v. Szycher*, 585 F.2d 443, 445 (10th Cir.1978). Entrapment is defined in Colorado as follows:

The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used.

§ 18–1–709, 8B C.R.S. (1986).

As is clear in the parties' briefs, the testimony given at the hearing may raise the issue of entrapment at trial. Because entrapment is an affirmative defense and a question of fact, the question whether

---

3. As noted by the Iowa Supreme Court, "we do not wish to be understood as condoning the police conduct in this case." *State v. Pooler*, 255 N.W.2d 328, 331 (Iowa 1977). The court said that the police conduct was "mitigated only because it undoubtedly arose from poor judgment rather than bad faith or malice, and it did not breach any right of this defendant. We trust that the fact it does not result in the defendant's acquittal in the present case does not mean it will recur." *Id.* In *Pooler*, an undercover police officer drank beers with the defendant and while "they were both under the influence of alcohol," they broke into a house together and the officer removed guns, jewelry and other items and placed them in the officer's car. *Id.* at 329–30. The court held: "we find the police participation in the burglary outrageous and reprehensible. However, we do not find it constituted entrapment as a matter of law [as held by the Iowa Court of Appeals] nor do we find it so outrageous and reprehensible that a defendant whose rights were not infringed should be acquitted because of it." *Id.* at 331..

there has been entrapment must be resolved by the trier of fact at trial.[4]

We conclude that the trial court abused its discretion in dismissing the petitions. We reverse the dismissal order and remand for reinstatement of the three petitions in delinquency against M.N.

ROVIRA and MULLARKEY, JJ., join in opinion by VOLLACK, J.

ERICKSON, J., specially concurs.

KIRSHBAUM, J., joins in the concurrence.

QUINN, C.J., dissents.

LOHR, J., joins in the dissent.

ERICKSON, Justice, specially concurring in the result:

In my view, a trial judge is not required, in a criminal case, to determine as a matter of law whether the conduct of law enforcement officers in encouraging, inducing, or causing an accused to commit a crime, is so outrageous as to require dismissal of criminal charges on due process grounds. The defense of entrapment is available at the time of trial, and the trial court can, in a proper case, interpose the outrageous conduct standard to protect the constitutional rights of an accused, but not until a trial has been held. Whether conduct is so outrageous as to violate due process standards involves factual issues which are in many respects similar to those raised in an entrapment defense. Acts of law enforcement officers which encourage or cause the commission of a crime should not be considered apart from evidence of the accused's predisposition to commit the crime. The evidentiary foundation incident to the defense of entrapment is, in my view, essential and must be available for consideration of the trial judge when the constitutional defense of outrageous conduct is determined.

For many years the rights of an accused has been protected by the laws of entrapment. *See* § 18-1-709, 8B C.R.S. (1986); *Evans v. People,* 706 P.2d 795 (Colo.1985). From the bare bones statement of facts which appear in this original proceeding, it appears that entrapment has not been overlooked as a defense and will be raised at the time of trial. After the trial is held, the court can consider whether the affirmative defense of entrapment is adequate to

---

**4.** In our view, the factors described in the dissent relate to the factual questions in entrapment. We defined the elements of the entrapment defense in *Evans v. People,* 706 P.2d 795 (Colo.1985).

(1) the defendant must be a person who, but for the inducement offered, would not have conceived of or engaged in conduct of the sort induced, (2) the defendant must in fact have engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and not as a result of the defendant's own predisposition, (3) the methods used to obtain such evidence must have been such as to create a substantial risk that this particular defendant would engage in the sort of conduct induced, and (4) the methods used must have been more persuasive than merely affording the defendant an opportunity to commit an offense, even when such an opportunity was coupled with representations or inducements calculated to overcome the defendant's fear of detection.

706 P.2d at 799. Colorado has adopted a subjective test for entrapment, with the result that "[t]he defendant's predisposition to commit the crime, rather than the conduct of the govern-

ment agent, remains the dispositive factor in determining whether entrapment has occurred." *Bailey v. People,* 630 P.2d 1062, 1067 (Colo. 1981).

The factors from *Isaacson,* for example, include whether the criminal behavior would not otherwise likely have occurred, and whether the accused's reluctance is overcome by friendship or persistence. These are the type of factual determinations appropriately considered in the context of entrapment. Because the factors adopted in *People v. Isaacson,* 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y.S.2d 714 (1978), are so analogous to the tests for an entrapment defense, Colorado's adoption of them in the due process context would result in "a due process based quasi-entrapment doctrine." *Isaacson,* 44 N.Y.2d at 529, 378 N.E.2d at 88, 406 N.Y.S.2d at 724 (Grabrielli, J., dissenting). Similar but not identical factors were also described by the Sixth Circuit Court of Appeals in *United States v. Brown,* 635 F.2d 1207, 1213 (6th Cir.1980) ((1) the type of criminal activity; (2) whether the government instigates the criminal activity or it was preexisting; (3) whether the government merely acquiesces, or instead directs and controls the activity; and (4) the relationship between the government conduct and the commission of the criminal acts.).

protect the defendant's constitutional rights. *See People v. Isaacson,* 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y.S.2d 714 (1978). The issue of outrageous conduct should not be resolved on the limited record that is before us in this original proceeding.

Only when the defense of entrapment proves to be inadequate or unavailable should the defense of outrageous conduct be entertained. The United States Supreme Court has stated that a law enforcement officer's conduct might be so outrageous that the government should be barred from seeking a defendant's conviction because of due process considerations. *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). If the outrageous conduct defense is proper, the standards laid down by the United States Supreme Court should be applied to determine whether the due process rights of the accused were violated. I do not believe that this is a proper case for resolution under Colorado constitutional standards because the outrageous conduct claim is derived from decisions of the United States Supreme Court and the resolution of federal constitutional due process claims.

I am authorized to say that Justice KIRSHBAUM joins in this concurrence.

QUINN, Chief Justice, dissenting:

I dissent from the judgment reversing the order of dismissal. In my view, the record supports the conclusion of the district court, sitting as a juvenile court, that the conduct of Deputy Sheriff Dabdoub in inducing M.N. to engage in a series of criminal acts was so outrageous as to violate due process of law under article II, section 25 of the Colorado Constitution. Because I would affirm the judgment of dismissal on state constitutional grounds, I see no reason to consider the validity of the dismissal under federal due process standards.[1]

## I.

Before addressing the propriety of the dismissal order, there is a preliminary matter which merits discussion. The majority states that the juvenile court's order of dismissal was erroneous "to the extent that it relied on its conclusion that Dabdoub's conduct constituted a criminal offense under section 19-3-119(3)," 8B C.R.S. (1986), at 1131–1132. That statute, as pertinent here, prohibits an adult from inducing, aiding, or encouraging a child to violate any state law. Although I fully agree with the principle that it is the prerogative of the district attorney, and not the court, to determine "whether justice requires that a particular individual should be charged with violating a criminal statute," *id.* at 1131, I cannot make the quantum leap.from that proposition to conclude that the juvenile court's ruling somehow violated this principle.

The juvenile court neither charged the deputy sheriff with a criminal violation nor initiated a criminal prosecution against him. Rather, the court in its ruling simply noted that the evidence presented at the dismissal hearing established to the court's satisfaction that Deputy Sheriff Dabdoub had induced M.N. to engage in criminal

---

1. In *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion), a plurality of the United States Supreme Court referred to *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), as having ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in which the predisposition of the defendant to commit the crime was established. Two justices concurred in *Hampton,* and three justices dissented. Justice Powell, joined by Justice Blackmun, concurred in the judgment but noted that he was "unwilling to join the plurality in concluding that, no matter what the circumstances, neither due process principles nor our supervisory power could sup-

port a bar to conviction in any case where the Government is able to prove predisposition." *Id.* 425 U.S. at 495, 96 S.Ct. at 1653. Justice Brennan, joined by Justices Stewart and Marshall, dissented on the basis that the police conduct exceeded constitutionally permissible limits and also constituted entrapment as a matter of law. In light of the concurrence of two justices and the dissent of three justices to the plurality opinion in *Hampton,* a dismissal on federal due process grounds in the context of outrageous police conduct, notwithstanding the defendant's predisposition to commit the offense, has not been rejected by the Supreme Court.

conduct and had thereby violated section 19–3–119(3). A police officer's conduct in inducing a juvenile to engage in violations of state law is certainly an appropriate factor for a court to consider when determining whether the governmental conduct was so outrageous as to amount to a violation of due process of law. *See* Part II, *infra.* With this preliminary matter aside, I turn to the propriety of the dismissal order.

## II.

In *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973), the United States Supreme Court noted that there might be certain situations in which the conduct of a law enforcement officer is so outrageous that due process principles would bar the government from invoking the judicial process to obtain a conviction. *See also Hampton v. United States,* 425 U.S. 484, 491, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976) (plurality opinion) (Powell, J., concurring). The Supreme Court, however, has never articulated the factors which might establish a due process violation. Similarly, while this court on at least one occasion has recognized that outrageous conduct by a police officer might constitute a due process bar to a pending criminal prosecution, *Bailey v. People,* 630 P.2d 1062, 1068 (Colo. 1981), we found no such violation under the facts of that case and did not discuss the particular factors that a court might properly consider in evaluating such a claim. The instant case, in my view, points up the need to delineate those factors if for no other reason than to prevent improper and unwarranted governmental solicitation of crime in the future.

In contrast to entrapment, which in Colorado is a statutory affirmative defense, § 18–1–709, 8B C.R.S. (1986), the defense of outrageous governmental conduct is constitutional in scope and originates in the principle that the constitutional guarantee of due process of law places limits on the exercise of governmental power in investigating possible criminal activity. If the governmental misconduct reaches a level of outrageousness, then due process of law serves to bar the prosecution of the accused independently of whether the affirmative defense of entrapment might also be applicable if the case were to proceed to trial. This distinction between outrageous governmental conduct and entrapment has been widely recognized by both federal and state courts, *see, e.g., United States v. Russell,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43; *United States v. Cantwell,* 806 F.2d 1463, 1469 (10th Cir.1986); *United States v. Brown,* 635 F.2d 1207, 1212 (6th Cir.1980); *United States v. Batres–Santolino,* 521 F.Supp. 744, 750 (N.D.Cal.1981); *People v. Isaacson,* 44 N.Y.2d 511, 520, 378 N.E.2d 78, 82–83, 406 N.Y.S.2d 714, 719 (1978). *State v. Hohensee,* 650 S.W.2d 268, 270–72 (Mo.App.1982), and was expressly noted by this court in its prior opinion in *Bailey v. People,* 630 P.2d at 1068. Thus, while some of the factors appropriate to the entrapment defense might well be relevant in resolving a claim of outrageous governmental conduct, the two defenses are legally distinct.

Because due process is a flexible standard, there is obviously no per se rule that will provide an answer to all due process claims of outrageous governmental conduct. While the total circumstances of the case must be considered, there are certain factors on which courts have focused in resolving such claims. Although these cases were decided in the context of a criminal prosecution against an adult offender, there is no reason why a different analysis should be employed in the case of a delinquency proceeding involving an act which would constitute a criminal offense if committed by an adult.

One factor, of particular significance here, is the legal status of the person against whom the governmental activity is directed. The Colorado Children's Code defines a "child" as "a person under eighteen years of age." § 19–1–103(4), 8B C.R.S. (1987 Supp.). Because children often lack the knowledge, experience, judgment, and control attributable to adults, the Colorado Children's Code generally vests exclusive jurisdiction in the juvenile court over a child who has committed an act which if

committed by an adult would be a felony. *Id.* § 19–2–102(1).[2] While many of the basic protections associated with a criminal proceeding are applicable to a delinquency proceeding in order to ensure fairness to the child, a delinquency proceeding is classified as civil in character "precisely 'to protect the young from the stigma frequently associated with criminal proceedings.'" *S.G.W. v. People,* 752 P.2d 86, 88 (Colo.1988) (quoting *S.A.S. v. District Court,* 623 P.2d 58, 60 (Colo.1981)). Because the welfare of the child assumes such a high priority in the eyes of the law, the General Assembly has provided that any adult who induces, aids, or encourages a child to violate a federal or state law, or municipal or county ordinance, or court order, commits the crime of contributing to the delinquency of a minor, a class 4 felony. § 18–6–701, 8B C.R.S. (1987 Supp.) (formerly codified at § 19–3–119(3), 8B C.R.S. (1981)). Police conduct that passes constitutional muster when directed against an adult, therefore, might well be constitutionally impermissible when employed against a juvenile.

The type of criminal conduct under investigation and the various investigative techniques employed to uncover suspected criminal activity certainly are appropriate matters to consider when determining the permissible scope of governmental investigative activity. *See United States v. Cantwell,* 806 F.2d at 1468–69; *United States v. Brown,* 635 F.2d at 1213; *United States v. Batres–Santolino,* 521 F.Supp. at 751. Many crimes, especially the so-called victimless offenses, could not otherwise be detected unless the government is permitted to engage in undercover activity and some degree of necessary deception in affording a person ready and willing to commit a crime the opportunity to do so. When, however, the government's involvement in criminal activities goes beyond the mere offering of such an opportunity, and when the governmental conduct is calculated to induce or instigate the commission of

a criminal act by one not already engaged in criminal activity or ready or willing to become so engaged, the government in effect is engaging in the manufacture of crime and the permissible line of lawful activity has been crossed. *See Russell,* 411 U.S. at 445, 93 S.Ct. at 1649 (Stewart, J., dissenting). In considering whether alleged governmental misconduct reached to the level of a due process violation, the New York Court of Appeals in *People v. Isaacson,* 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y.S.2d 714, listed the following factors as relevant to its determination that defendant's prosecution was barred under state due process standards: whether the law enforcement officer initiated criminal behavior which would not otherwise likely have occurred, or merely became involved in ongoing criminal activity which preexisted the officer's involvement; whether the accused's reluctance to engage in criminal conduct was overcome by the officer's appeal to friendship or sympathy, the officer's promise or representation of exorbitant gain, or the officer's persistent solicitation in an effort to overcome the accused's unwillingness to engage in criminal activity; whether the record demonstrates that the officer's conduct was motivated by nothing more than a desire to obtain a conviction without regard to any consideration of preventing further crime or protecting the public; and whether the officer engaged in criminal or other improper conduct antithetical to the legitimate objectives of law enforcement. 44 N.Y.2d at 521, 378 N.E.2d at 83, 406 N.Y.S.2d at 719; *see also State v. Hohensee,* 650 S.W.2d 268 (governmental action in sponsoring burglary was outrageous conduct in violation of due process and burglary prosecution was accordingly barred).

The existence of a predisposition on the part of the accused to commit the crime, while fatal to a claim of entrapment under *United States v. Russell,* 411 U.S. at 432–36, 93 S.Ct. at 1643–45, does not serve to eradicate a due process claim predicated on

---

**2.** In cases involving repeat juvenile offenders and class 1 felonies allegedly committed by juveniles fourteen years of age and older, the juvenile may be prosecuted as an adult in the district court. § 19–2–805, 8B C.R.S. (1987 Supp.). These exceptions to the juvenile court's jurisdiction are not applicable here.

outrageous governmental conduct. There is both federal and state authority recognizing the proposition that "governmental over involvement, if 'outrageous,' will bar prosecution of a defendant on the ground of deprivation of due process even if he is 'predisposed.'" *State v. Hohensee,* 650 S.W.2d at 271; *see also United States v. Bagnariol,* 665 F.2d 877 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *United States v. Fekri,* 650 F.2d 1044 (9th Cir.1981); *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978); *Batres–Santolino,* 521 F.Supp. 744; *Isaacson,* 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y.S.2d 714.

It bears emphasis that no single factor is determinative of the validity of a due process claim based on outrageous governmental conduct. Each factor must be viewed in combination with others and in light of the total circumstances of the case. As long as the evidence shows that the government's conduct reached a demonstrable level of outrageousness, and as long as the trial court fairly considered the totality of circumstances in so concluding, the sanction of dismissal should not be overturned on appeal merely because an appellate court might have decided the historical facts of the case differently. *See, e.g., Maine v. Taylor,* 477 U.S. 131, 145, 106 S.Ct. 2440, 2451, 91 L.Ed.2d 110 (1986).

### III.

In light of the above considerations, I conclude that the record provides adequate support for the juvenile court's ruling that the governmental misconduct in this case reached a demonstrable level of outrageousness sufficient to support an order of dismissal pursuant to the Due Process Clause of the Colorado Constitution.

On September 17, 1986, when Deputy Sheriff Dabdoub first contacted M.N. about purchasing marijuana, M.N. was 16 years old and enrolled as a sophomore in high school. Because of difficulties with reading and spelling, M.N. had been enrolled in special education classes since the fifth grade. Deputy Sheriff Dabdoub was 22 years old, was posing as a senior student at the high school under an assumed name, and made contact with M.N. in one of M.N.'s classes. Although M.N. testified that he had purchased and used marijuana on several prior occasions, Dabdoub had never discussed marijuana or other illegal activities with M.N. before September 17, 1986. Nothing in the record indicates that the officer had any reason to suspect that M.N. was presently involved in the trafficking of drugs or any other illegal activity.

Deputy Sheriff Dabdoub undoubtedly had the right to assume a false identity as a high school student in order to investigate illegal drug activity in the high school community. In the course of that investigation, Dabdoub was also justified in asking M.N. about possible sources of marijuana. Indeed, if the People had made some showing that the particular circumstances of the investigation warranted Dabdoub in giving $30 to M.N. to make a drug purchase on September 17, I would have little difficulty in finding such conduct constitutionally permissible as necessary to the officer's mission of ferreting out illegal drug activity. The People, however, made no such showing. So far as the record shows, the officer might well have effectively carried out his investigation by asking M.N. about sources of marijuana and then purchasing the marijuana himself, rather than inducing M.N. to do so and giving M.N. some of the marijuana for M.N.'s own use. Moreover, the record leaves no dispute that the officer's conduct in inducing M.N. to commit criminal acts did not stop at the September 17 purchase of marijuana.

Following the September 17 incident, Dabdoub engaged in a continuous course of conduct designed to induce, encourage, and actually assist M.N. in committing various criminal acts. On or about September 24, for example, Dabdoub telephoned M.N. at home and asked him to steal tires and rims from automobiles. Dabdoub then drove M.N. and another juvenile to a location preselected by Dabdoub to carry out the theft. During this episode, after M.N. and the other juvenile were unable to remove the tires and rims and expressed a desire to discontinue their efforts, the officer en-

couraged them to try again and the juveniles did so and completed the theft.

Two days later, on September 26, Dabdoub once again approached M.N. and asked him for further help in purchasing marijuana. Although M.N. initially refused because he wanted to go home, the officer persisted in convincing M.N. to help him find some marijuana for purchase. The officer then drove M.N. to an apartment house, directed him to follow a man walking up to one of the apartments, gave M.N. $30 to make the purchase, and then gave M.N. some of the marijuana for his own use after the transaction was completed.

In summary, the record demonstrates that Deputy Sheriff Dabdoub initiated all contact with M.N. with respect to criminal activity, actively encouraged M.N. to engage in a series of illegal acts, assisted the juvenile in committing various criminal acts, gave M.N. illegal drugs for M.N.'s consumption, and on at least two occasions persuaded M.N. to engage in criminal conduct notwithstanding M.N.'s reluctance and unwillingness to do so. This degree of governmental overreaching tainted the deputy sheriff's investigative activity with respect to M.N. from its inception.

One of the primary purposes of the Children's Code is to divert children from criminal activity, not to encourage and aid them in lawlessness. Permitting a law enforcement officer to induce, encourage, and assist a sixteen year old high school student to engage in the continuous course of criminal conduct demonstrated by this record is hardly conducive to the attainment of this purpose. "It is the Government's duty to prevent crime, not to promote it." *United States v. Russell*, 411 U.S. at 449, 93 S.Ct. at 1651 (Stewart, J., dissenting). In my view, the record in this case adequately supports the juvenile court's conclusion that Deputy Sheriff Dabdoub's conduct was sufficiently outrageous to bar the state under the Due Process Clause of the Colorado Constitution from invoking the judicial process for the purpose of obtaining an adjudication in delinquency against M.N., who was subjected to the governmental misconduct.

I would accordingly affirm the judgment of dismissal.

I am authorized to say that Justice LOHR joins me in this dissent.