1999-NMCA-096

985 P.2d 168

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Manuel BONILLA, Defendant–Appellant.**

**No. 18972.**

Court of Appeals of New Mexico.

June 2, 1999.

Certiorari Granted, No. 25,801, July 8, 1999.

Patricia A. Madrid, Attorney General, Santa Fe, Max W. Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ALARID, J.

{1} In this case, we consider whether an undercover police officer's use of Defendant's minor son to facilitate a cocaine purchase constituted outrageous governmental conduct, thereby requiring dismissal of the charges under the "objective entrapment" doctrine outlined in *State v. Vallejos,* 1997–NMSC–040, ¶¶ 15–18, 123 N.M. 739, 945 P.2d 957. We agree with the trial court that the particular conduct in this case was not so outrageous as to require dismissal. We also affirm on the other issues raised by Defendant on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} The facts in this appeal are largely undisputed. In 1996, Agent Marco Tapia was employed by Eddy County Narcotics Unit. Agent Tapia also worked as an undercover narcotics agent for the Lea County Drug Task Force. The task force had targeted Defendant for a sting operation, in which Agent Tapia would attempt to trade property for drugs. An unnamed confidential informant had introduced Agent Tapia to Defendant prior to the date that the attempted transaction would take place.

{3} Agent Tapia visited Defendant's residence twice on May 9, 1996. The first visit occurred at approximately 8:45 p.m. Agent Tapia testified that he had contact at the home with a woman who he believed was Defendant's wife. Agent Tapia was unable to directly converse with the woman because she only spoke Spanish, and Agent Tapia did not speak Spanish. Agent Tapia testified that he spoke "through the assistance of a small boy that was present at the residence." He estimated that the boy was between ten and twelve years of age. Although Agent Tapia did not go into a great amount of detail in his testimony, he did relate how the term "blanca" was used during the course of the three-way conversation between himself, the boy, and the woman. Specifically, Agent Tapia testified that he was led to believe that he could return to the home later and trade his merchandise for "blanca," which Agent Tapia interpreted as street slang for cocaine. Defense counsel rhetorically asked, "[y]ou used a minor, ten years old, to attempt to secure cocaine for you?" Agent Tapia responded by claiming, "[i]t wasn't ... by choice.... The young boy was very comfortable with discussing matters relating to ... drug sales and I had a problem with it, but he was very comfortable with it." Agent Tapia further stated that he did not force the child to act as an interpreter, did not entice him in any way, but to the contrary, it was the child's idea to interpret.

{4} Agent Tapia returned to Defendant's residence and they discussed trading Agent Tapia's property for cocaine. Agent Tapia testified that Defendant used the term "1/16" to describe the amount of cocaine involved in the transaction. Agent Tapia testified that this referred to $\frac{1}{16}$ of an ounce of cocaine, which had a street value of $100–125. Agent Tapia then proceeded to exchange his property for the cocaine and $30 cash.

{5} Prior to trial, Defendant moved to dismiss on the ground that the use of the minor to translate the first visit on May 9, 1996, constituted outrageous governmental conduct. The trial court ruled against Defendant after concluding that the issue posed

a pure question of law; however, the trial court allowed the jury to hear Agent Tapia's above-noted description of the encounter with the child because the trial court believed that it provided background information for the subsequent transaction. The trial court ruled in Defendant's favor with respect to the exclusion of an audiotape of Agent Tapia's first visit to the residence on May 9, 1996. After both sides had rested, however, Defendant sought to reopen the evidence and have the tape played to the jury. The trial court ruled against Defendant. The jury convicted Defendant of trafficking cocaine and he was given the statutory basic sentence notwithstanding his claim that mitigating factors weighed in his favor.

## DISCUSSION

### A. Objective Entrapment

 {6} In *Vallejos,* our Supreme Court recognized that "police on occasion have engaged in conduct that might not ensnare the ordinary person but nevertheless exceeds the standards of proper investigation and violates substantive due process." 1997–NMSC–040, ¶ 15, 123 N.M. 739, 945 P.2d 957. When a defendant seeks to dismiss charges on this basis, "the trial court carefully scrutinizes both the methods and purposes of police conduct to determine whether police tactics 'offend our notions of fundamental fairness', or are so outrageous that 'due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction[.]' " *Id.* ¶ 16 (citation omitted). The issue presented is one of law and policy to be decided in the first instance by the trial court. *See id.*

 {7} *Vallejos* recognized two categories of impropriety: "unconscionable methods and illegitimate purposes." *Id.* ¶ 17. Defendant's claim is that Agent Tapia's conduct falls within the former category in that it is simply unconscionable to use a minor to facilitate a drug transaction. *Vallejos* provides practical guidance to courts by enumerating fifteen examples of unconscionability, most of which address impropriety that directly involves a targeted suspect. *See id.* ¶ 18. In the present case, of course, the conduct only affects Defendant indirectly. Nevertheless, we do not believe that this is fatal to Defendant's argument because the focus of objective entrapment is on the propriety of the underlying police conduct.

{8} As noted, Defendant's argument on appeal does not rest on specific authority supporting dismissal under the facts of this case, but instead asks us to accept the broad proposition that it is simply unacceptable for police to involve a minor in a drug transaction. The State counters by referring us to two cases where minors had been used by police during narcotics investigations. In *United States v. Penn,* 647 F.2d 876, 878 (9th Cir.1980), police suspected that the defendant was distributing heroin from her residence with the assistance of some of her minor children. When officers executed a search warrant at the home, they found ten people on the premises, including the defendant's children, who ranged in age from five to twenty-two. *See id.* at 878–79. The officers found cocaine, but were unsuccessful in their search for heroin. *See id.* at 879. The officers escorted the defendant's five-year-old son, Reggie, to the bathroom, at which time Reggie indicated that he knew where the heroin was hidden. *See id.* Later, Reggie was asked by an officer if he would take the officer out to where the heroin was located. *See id.* Reggie initially hesitated, but changed his mind after the officer told him that he would be given five dollars. *See id.*

{9} The federal district court in *Penn* granted the defendant's motion to suppress after concluding that the bribery of Reggie shocked the court's conscience and violated the defendant's right to due process. *See id.* The Ninth Circuit reversed. The court initially noted the factors underlying the due process claim: (1) the police bribed Reggie to give information, (2) Reggie was very young, and (3) Reggie was the defendant's son. *See id.* at 880. The court concluded that additional factors militated against finding a due process violation. These included the fact that the officers had probable cause and a broad search warrant with respect to suspected heroin dealing; the police did not threaten or deceive Reggie; the police conduct violated no law; the police had reason to believe that the defendant used her children in her heroin trafficking; Reggie had indicat-

ed that he knew where the heroin was located before the bribe was made; heroin trafficking is a serious crime; and it was not a regular practice of the police to have children inform on their parents. *See id.* at 881.

{10} The State also refers us to *Satterwhite v. State*, 697 S.W.2d 774, 776 (Tex.App. 1985), where police had sent the defendant's minor nephew to purchase marijuana from him. Without elaboration, the court in *Satterwhite* concluded that "the police simply sent a minor who was related to appellant to purchase marijuana. This activity by the police fails to shock our conscience ." *Id.* at 776. Accordingly, the court rejected the defendant's due process claim.

{11} Another case not cited in the parties' briefs is *People, In re M.N.*, 761 P.2d 1124 (Colo.1988) (en banc). In that case, an undercover drug enforcement officer requested, on two separate occasions, that the child, M.N., purchase marijuana for him, and also had requested in a separate incident, that M.N. steal tires and rims for him. *See id.* at 1125–26. The district court dismissed the three delinquency petitions after concluding that the inducement and encouragement of the minor by the undercover agent constituted outrageous police conduct. *See id.* at 1126–27. The Colorado Supreme Court reversed, concluding that neither deceptive police behavior nor the potential violation of the contributing to the delinquency of a minor statute rose to the level of outrageous police conduct. *See id.* at 1129–31. The court left open use of entrapment as an affirmative defense to be determined by the trier of fact.

■ {12} Although *People, In re M.N.* differs from *Penn, Satterwhite,* and the present case in that the minor was the target of the undercover activity, we find it instructive with respect to Defendant's argument that Agent Tapia may have technically violated the law by engaging Defendant's minor son to set up a drug transaction. We agree with the Colorado court that it is the duty of the district attorney, not the court, to engage in prosecutorial discretion with respect to charging individuals for the commission of crimes. *People, In re M.N.*, 761 P.2d at 1131. Indeed, *Vallejos* notes that the objective entrapment constraint on police activity

does not prevent police from engaging in deception, playing the role of criminal, or participating in the crimes that are being investigated. *See* 1997–NMSC–040, ¶ 22, 123 N.M. 739, 945 P.2d 957. Therefore, the fact that Agent Tapia may have contributed to the delinquency of a minor or exposed the minor to a delinquency charge is not dispositive with respect to the due process inquiry.

■ {13} Turning to the specific conduct at issue in this case, we believe that there are a number of factors that weigh against dismissal. First, Agent Tapia testified that the child made an unsolicited offer to act as interpreter, and the child was very comfortable with discussing matters relating to drug sales. It is reasonable to conclude that, like the situation in *Penn*, 647 F.2d at 881, the child was aware of drug trafficking that was taking place in the home. Second, this initial meeting was of short duration and was attenuated from the actual drug transaction, which took place later and solely between Agent Tapia and Defendant. Third, Defendant failed to produce any evidence to suggest that Agent Tapia intentionally went to the residence when Defendant was not home, or that he otherwise targeted the child as a conduit to Defendant. To the contrary, Agent Tapia's testimony indicates that he was hesitant and uncomfortable in using the child as an interpreter. Finally, there was no evidence presented that Agent Tapia or the task force had a pattern of encouraging minors to inform on their parents. Such conduct was not outrageous and did not violate due process. We caution, however, that each case is unique and the use of minors during police investigations will be closely scrutinized by courts.

**B. Sentence**

■ {14} Defendant contends that the trial court impermissibly penalized him for exercising his right to go to trial. Defendant's argument is based on oral comments made by the trial court during the sentencing hearing of another defendant in an unrelated case that immediately preceded Defendant's sentencing, where the court stated, "[I]t is generally the policy of this court that if a person is found guilty of a crime in this court

by a jury, that the statutory penalty be imposed." The court noted that there were reasons why a plea had not been entered in that case, and went on to suspend approximately half of the defendant's statutory sentence.

{15} When Defendant's case was called for sentencing, Defendant claimed that there were mitigating factors that justified departure from the basic sentence, including the fact that this was Defendant's first felony conviction, that Defendant came from a large and impoverished family, and that the amount of cocaine involved was small. The presentence report had recommended incarceration, but did not specify any amount of time. The trial judge stated that he found no mitigating circumstances and imposed the basic statutory sentence.

{16} On appeal, Defendant argues that the trial court's actions indicate that it has a policy of penalizing defendants who choose to go to trial instead of agreeing to a plea. We believe that the evidentiary record does not sufficiently support Defendant's claim. The sentence itself was legal. *See State v. Augustus,* 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.1981) (holding that a jail sentence imposed upon a defendant which was in accordance with the law does not constitute an abuse of discretion). With respect to the trial court's comments, Defendant's claim is too speculative to serve as a basis for reversal. *Cf. State v. Scussel,* 117 N.M. 241, 243, 871 P.2d 5, 7 (Ct.App.1994) (stating that remarks of trial court are generally not used as basis for reversal). Specifically, the trial court could have simply been stating that, unlike the typical plea agreement, a conviction after a jury trial does not limit the court's sentencing authority. In the absence of additional evidentiary support for Defendant's claim, we are not inclined to interpret the trial court's comments in a manner that undermines its validity. *See In re Ernesto M.,* 1996–NMSC–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). It follows that we also are not persuaded by Defendant's claim that the trial court violated Defendant's procedural rights by failing to consider mitigating circumstances. The fact that the trial court did not agree with Defendant does not mean that the trial court failed to consider any relevant sentencing information. To assume otherwise is to disregard our standard of review.

### C. Refusal to Reopen the Evidence

{17} On September 2, 1997, the defense rested its case and all witnesses were released. Closing argument was scheduled for the following day. On that day, Defendant sought to reopen the case so that the jury could listen to the portion of the undercover tape that had been made during the first visit to Defendant's residence on May 9, 1996. Defendant alleged that this conversation would explain why Defendant referred to "16" during the second visit in that it represented the street value of Agent Tapia's property rather than $\frac{1}{16}$ of an ounce of cocaine. The trial court denied Defendant's request and Defendant now challenges this ruling as an abuse of discretion.

{18} We agree with the State that the trial court did not abuse its discretion in light of the fact that the tape had initially been excluded as a result of Defendant's own motion. In addition to Defendant's change of position and lack of due diligence, we note that the proffered evidence had minimal value. There was extensive testimony concerning the actual drug transaction underlying Defendant's conviction, at which time cocaine was exchanged for Agent Tapia's purportedly stolen property. Accordingly, any suggestion that Defendant intended to exchange only money, that is, $16 for the street value of the property, asks the jury to conjure up theories that are contrary to any reasonable view of the evidence in this case. In light of the lack of due diligence and the minimal probative value of the proffered evidence, we affirm the trial court's ruling. *See State v. Padilla,* 118 N.M. 189, 198, 879 P.2d 1208, 1217 (Ct.App.1994).

### CONCLUSION

{19} For the reasons set forth above, we hold that the trial court properly denied Defendant's objective entrapment motion, did not deprive Defendant's constitutional and statutory rights during sentencing, and acted within its discretion in refusing to reopen the

evidence just prior to closing argument. Affirmed.

{20} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.