This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                    **NO. 28,389**

**IVAN LUJAN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Paternoster, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant was convicted of trafficking cocaine, possessing cocaine, and aggravated assault with a deadly weapon based on a cocaine sale he made to an undercover agent in January 2007 and a search warrant that was executed on him in February 2007. Defendant appeals these convictions on a multitude of grounds. We affirm.

**I.    BACKGROUND**

On January 17, 2007, a New Mexico State Police undercover narcotics agent assisted in an attempt to purchase narcotics from Defendant in room 101 of the Comanche Inn in Taos, New Mexico. Using an unwitting third party, the agent arranged to meet with Defendant in order to purchase cocaine. The agent met with Defendant in the hotel room to negotiate the sale. Eventually, Defendant retrieved the cocaine from a nightstand drawer containing several clear plastic baggies of cocaine and sold it to the agent for $400. That evening, the undercover agent placed the cocaine in an evidence drop box.

On February 27, 2007, officers executed a search warrant on Defendant, again in room 101 of the Comanche Inn. Defendant and a Ms. Lovato were the only people in the room. A packet of cocaine was found on Ms. Lovato's person. Agents arrested Defendant and read him his rights. Defendant elected to remain silent and asked for his attorney. Agent Edwardo Martinez testified that he found $892 in the hotel room

on February 27, the majority of which was found in Defendant's wallet. He also testified to finding a pistol, a scale, and some white powder.

Because the money was photographed and was not going to be seized for forfeiture, Agent Martinez did not take it into custody as evidence. Agent Martinez indicated that he prepared the receipt to document that the money had been returned to Defendant. Defendant objected to the introduction of the receipt, reiterating the arguments he had made in his denied motion in limine to exclude the receipt. The objection was overruled.

A jury convicted Defendant of trafficking cocaine by distribution and aggravated assault with a deadly weapon for the events that took place on January 17. The jury also convicted Defendant of possession of cocaine based on evidence discovered in the search on February 27. The jury found Defendant not guilty of trafficking by possession with the intent to distribute and not guilty of conspiracy to traffic for the February incident.

## II.    DISCUSSION

Defendant raises eight arguments, most of them pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), which he believes warrant reversal. We address each in the order they were raised.

**A.      Suppression of the Receipt**

Defendant's first argument is that the district court's failure to suppress the receipt Defendant signed when his money was returned violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and his right to an attorney.  Because the facts regarding the timing of the events surrounding the arrest and the seizure and return of the $892 were not well developed, this Court is not in a good position to determine whether Defendant's rights were violated.  For example, it is unclear from the record whether the wallet was returned at the hotel, during booking at the police station, or at some other point.  It is also unclear how much time passed between the seizure of the wallet and its return, and when Defendant was given his Miranda rights in relation to these events.

Although we are skeptical that asking Defendant to sign the receipt was constitutionally sound, we need not decide the issue to dispose of this case.  Assuming without deciding that the police violated Defendant's rights, any error was harmless.  For constitutional error, "a reviewing court should only conclude that an error is harmless when there is no reasonable *possibility* that it affected the verdict." *State v. Barr*, 2009-NMSC-024, ¶¶ 53, 56, 146 N.M. 301, 210 P.3d 198.  To decide whether the error was harmless, a reviewing court should consider whether there is "(1) substantial evidence to support the conviction without reference to the improperly

5

admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the [s]tate's testimony." *Id.* ¶ 56 (footnote omitted).

The $892 was relevant to show intent to distribute for Count Four, the trafficking by possession with intent to distribute count arising out of the February search. Defendant was acquitted of that charge. We nevertheless examine whether the receipt was harmless with respect to Defendant's conviction for trafficking by distribution based on the January purchase and his conviction for possession based on the February search.

**1.     Count 1:  Trafficking by Distribution in January**

In order to convict Defendant of trafficking cocaine by distribution for the January events, the State was required to prove that Defendant transferred cocaine to another and that he knew or believed that it was cocaine. Additionally, the instruction required that these events must have happened "on or about the 17th day of January, 2007." The trafficking by distribution count did not have an intent element.

The State presented substantial evidence to support this without reference to the receipt it obtained for the cash on February 27. The undercover agent testified that he purchased cocaine from Defendant, noting specifically that "Ivan transferred the

6

cocaine to my hands" and that "[Ivan] was the one who gave me the narcotics." The forensic technician who tested the substance testified that she had identified it as cocaine. The undercover agent, the forensic technician, and the evidence custodian each testified as to the chain of custody of the cocaine between the purchase and the testing.

By comparison, the evidence of the receipt is minuscule. The entire discussion of the receipt, including defense objections, consumes only three pages of the transcript. Furthermore, the receipt does not address either of the two elements in Count One. Finally, there is no conflicting evidence regarding this charge, and Defendant points to none in his brief. In fact, the argument in the brief is entirely directed to the trafficking cocaine by possession with intent to distribute charge of Count Four, upon which the jury found Defendant not guilty. Under these circumstances, we hold that the admission of the receipt was harmless error with respect to the conviction for Count One.

**2.      Count 4:  Possession of Cocaine in February**

Because Defendant was acquitted of the trafficking charge with respect to the February incident, we do not examine that count. We do address his conviction for the lesser included offense of possession arising out of the February incident.

To convict for possession of cocaine, the State had to prove that Defendant had cocaine in his possession and that he knew or believed that it was cocaine. The jury was further instructed that

> A person is in possession of cocaine, when, he knows it is on his person or in his presence, and he exercises control over it.

> Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.

> Two or more people can have possession of a substance at the same time.

> A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

There is substantial evidence to support Defendant's conviction for possession of cocaine for the February incident. Sergeant Chris Weare testified that when he entered the hotel room to execute the warrant, the room contained Defendant and Ms. Lovato, who was on one of the beds wearing only underwear. During the arrest, he observed a packet of white powdery substance that had fallen from Ms. Lovato's body when she stood up. Agent Martinez seized the cocaine. **[Tr. Vol. 2: 347-53]** Agent Martinez also testified that he recovered additional items in the hotel room typical of drug trafficking: a scale, a gun, and $892 in cash. The act of hiding the cocaine and the additional drug indicia of drug sales show awareness that the substance was cocaine. Furthermore, the jury could reasonably have concluded from the same

8

evidence that Defendant exercised control over the cocaine, either as a user or as a dealer.

The evidence of the receipt is small in comparison. It could have had no reasonable effect on the total evidence directed toward this count. Neither is there any contradictory evidence here. Accordingly, we decline to disturb the district court's ruling.

**B.      Suppression of the Chain of Custody Evidence**

Defendant's second argument is that the district court "committed reversible error in failing to suppress the chain of custody evidence pertaining to the January incident." "We review a district court's ruling on late discovery for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027. We consider the following factors in determining whether late disclosure of evidence requires reversal: "(1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *Id.* ¶ 15 (internal quotation marks and citation omitted). Non-disclosed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (internal

quotation marks and citation omitted). Prejudice is determined by examining "whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." *Id.* (alteration omitted) (internal quotation marks and citation omitted).

It is clear that the State had a duty to disclose the chain of custody information. *See* Rule 5-501(A)(3) NMRA; *State v. Clark*, 105 N.M. 10, 15-16, 727 P.2d 949, 954-55 (Ct. App. 1986). Nevertheless, Defendant has shown neither the materiality nor the prejudice necessary to convince us there was error. Defendant does not explain how the chain of custody evidence was material; that is, how there was a reasonable probability that the outcome would have been different had Defendant received the chain of custody materials earlier. Even without the custody forms, Defendant was aware that several witnesses intended to testify that the substance Defendant had sold to the undercover agent was cocaine, including testifying as to their part in the chain of custody. Questions about gaps in the chain of custody go to the weight of the evidence, not its admissibility. *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. Also, admission of the evidence is within the district court's discretion "when the evidence is shown by a preponderance of the evidence to be what it purports to be." *Id.* Accordingly, even without the forms, Defendant needed to

prepare for the possibility that the cocaine from the January incident would be admitted.

Nor has Defendant shown prejudice. Defendant has not explained in his brief how earlier disclosure would have caused him to prepare differently for trial. The record suggests one possibility: that instead of making the tactical decision to do nothing once he became aware that the State had not disclosed the custody forms, Defendant would instead have had to prepare his defense based on the evidence. We agree with the district court that Defendant cannot make a tactical decision to do nothing and then claim it prejudiced him on appeal. Furthermore, the district court made it clear that the State risked losing the evidence, and potentially its entire case, if adequate foundation could not be laid. But the State did lay the necessary foundation, Defendant did effectively cross-examine regarding custody, and the jury decided for the State.

Defendant has not shown the necessary materiality or prejudice to prevail on this issue. Additionally, the district court appears to have provided Defendant with ample opportunity to challenge the custody forms. On this record, we cannot say that the district court abused its discretion by not suppressing the chain of custody.

**C. Unfair Inducement: Denial of the Motion to Sever**

Defendant's third argument is that the district court abused its discretion by denying his motion to sever the January charges (Counts One and Four) from the February charges (Counts Two and Three). Denial of a motion to sever is reviewed for abuse of discretion. *See State v. Gallegos*, 2007-NMSC-007, ¶ 16, 141 N.M. 185, 152 P.3d 828. "If evidence pertaining to each charge would not be cross-admissible at separate trials, the trial court abuses its discretion when it decides not to sever joined offenses." *Id.* ¶ 47. "However, even if the trial court abused its discretion we must consider whether that error actually prejudiced [the defendant]." *Id.* ¶ 20.

On appeal, Defendant's argument as to why denial of the motion to sever was reversible error is that "the evidence should not have been cross-admissible to show knowledge and intent in order to rebut the defense of improper inducement by police." The defense of inducement only applied to the trafficking charges, and Defendant was only convicted of trafficking in Count One (which dealt with the January sale). We therefore understand this argument to mean that, had the trials been severed, the February evidence would not have been admissible in the trial regarding the January events.

We assume without deciding that the February evidence would not have been cross-admissible and that the denial of the motion to sever was error. However, once

12

again, the error did not prejudice Defendant. As discussed below in the sufficiency section, the January evidence by itself provided a sufficient, and indeed compelling, basis for the jury to conclude that Defendant was predisposed to sell cocaine. The additional evidence from February, while also relevant to Defendant's penchant for selling drugs, did not prejudice his defense.

**D.     Unfair Inducement:  Sufficiency**

Defendant's fourth argument is that his conviction of trafficking by distribution was improper because the State failed to present adequate evidence that Defendant was predisposed to commit the crime. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. This evidence is sufficient if it "could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted).

Defendant concedes that the jury instruction on inducement correctly stated the law. Although it is not clear from the briefs, this instruction relates to the subjective test for entrapment. *See* UJI 14-5160 NMRA Comm. Comment. The subjective

standard focuses on the defendant's predisposition. *In re Alberto L.*, 2002-NMCA-107, ¶ 8, 133 N.M. 1, 57 P.3d 555. "Government officials engage in subjective entrapment when they originate the criminal design and implant the disposition to commit the crime in the mind of an innocent person in order to enable prosecution." *Id.* "A defendant is considered to have been predisposed if he was ready and willing to commit the crimes whenever an opportunity was afforded." *Id.* ¶ 11 (internal quotation marks and citation omitted).

The relevant evidence is as follows. The undercover agent arranged an introduction with Defendant via a third party for the purpose of buying cocaine, and immediately upon entering the hotel room Defendant offered to sell him a half-ounce of cocaine for $400. The agent also testified that Defendant eventually retrieved the cocaine from a drawer containing a number of clear plastic baggies that were rolled up and ready to be distributed. Viewing this testimony in the light most favorable to the conviction, the jury could easily have concluded that Defendant was ready and willing to sell the cocaine. In opposition to this, Defendant offers only that "[Agent Martinez] testified, 'Mr. Lujan would probably never approach me to sell the cocaine.'" However, the full testimony dispels any notion that this statement was evidence of Defendant's disposition:

Q.    [Defendant] never approached you to try to sell you cocaine?

14

A.    [Defendant] would probably never approach me to sell the cocaine.

Q.    Because he knows you are a police officer?

A.    I have known [Defendant] since he was a young boy.  And, yes, he does know I am a police officer.

Agent Martinez had been an officer for just over ten years.  This exchange does not create any reasonable doubt calling into question the jury's verdict.  Sufficient evidence supports the jury's implicit finding that Defendant was predisposed to sell cocaine.

**E.    Unfair Inducement:  Jury Instructions**

Defendant's fifth argument is that it was reversible error for the district court to submit UJI 14-3110 NMRA to the jury without his proposed modifications.  The propriety of jury instructions given or denied is a mixed question of law and fact which we review de novo.  *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.  Jury instructions are interpreted as a whole, not singly.  *State v. Parish*, 118 N.M. 39, 41, 878 P.2d 988, 990 (1994).  Once adopted, jury instructions are presumed to be correct statements of the law.  *State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).  Where the New Mexico Supreme Court has not already ruled on the issue, the Court of Appeals may examine whether a jury instruction correctly reflects the applicable law.  *Id.*

15

The district court gave two Uniform Jury Instructions without modification: UJI 14-3110, regarding trafficking by distribution, was given as Instruction 8; and UJI 14-5160, regarding entrapment, was given as Instruction 14. The district court denied Defendant's request that UJI 14-3110 be modified to contain an additional element that "[t]he transfer of cocaine was not the result of unfair inducement." Read together, Instructions 8 and 14 fully and correctly inform the jury on the defense of subjective entrapment. *See, e.g.*, *In re Alberto L.*, 2002-NMCA-107, ¶¶ 8-9. Because a reasonable juror would not have been misdirected by these instructions, reversal is not warranted. *See Parish*, 118 N.M. at 42, 878 P.2d at 991.

We decline Defendant's invitation to extend *Parish* to cover subjective entrapment. In *Parish*, the New Mexico Supreme Court reversed a voluntary manslaughter conviction because the jury instruction did not contain an element requiring the jury to find that the accused had not acted in self-defense. 118 N.M. at 41, 878 P.2d at 990. Like the unfair inducement at issue here, self-defense was an element of manslaughter that the state was required to disprove beyond a reasonable doubt. *Id.* at 43-44, 878 P.2d at 992-93. However, the manslaughter and self-defense instructions, read as a whole, did not correctly convey this burden. *Id.* at 44, 878 P.2d at 993. Unlike the instructions at issue in *Parish*, the instructions here clearly convey to a reasonable juror how the defense works: namely, that the jury must acquit

Defendant of trafficking cocaine if the State fails to prove that Defendant was not unfairly induced. We conclude that the additional language requested by Defendant was not required.

**F.    Refusal to Strike Jurors for Cause**

Defendant's sixth argument is that the court erred in refusing to strike three jurors for cause. "The trial court may properly exclude a juror for cause if the juror's views would substantially impair the performance of the juror's duties in accordance with the instructions and oath." *State v. Clark*, 1999-NMSC-035, ¶ 10, 128 N.M. 119, 990 P.2d 793. "Whether a prospective juror should be excused for cause rests within the sound discretion of the trial court." *State v. Hernandez*, 115 N.M. 6, 22, 846 P.2d 312, 328 (1993). We will not disturb the district court's ruling absent manifest error or a clear abuse of discretion. *Id.* The burden of establishing abuse of discretion rests on the moving party. *Id.*

Defendant argues that the first juror, Andrea Sanchez, should have been struck for cause because during voir dire she stated that her "mind would be on her classes or her son and not on the trial." In fact, Ms. Sanchez said that her mind would be "in and out" of court and that she "[couldn't] say [her] full attention would be here." However, she then indicated that she could concentrate "if that's what [she] had to do." Defendant used a preemptory on Ms. Sanchez. Our courts have recognized that

17

the district court is in the best position to assess the juror's state of mind. *Clark*, 1999-NMSC-035, ¶ 10. Defendant points to no abuse of discretion here, and we find none.

Defendant also objects to the denial of his request to strike Rowdy Wade for cause. Mr. Wade indicated that he felt that stiffer drug laws and sentences might help the government win the war on drugs. The State argued that Defendant had not gone into enough detail with Mr. Wade to provide cause, and the district court denied the strike. Mr. Wade was seated on the jury. Defendant does not indicate on appeal how this choice was abuse of discretion. Furthermore, we have indicated that where there is genuine concern about a juror, an effort should be made to develop an adequate record. *See State v. Dobbs*, 100 N.M. 60, 72, 665 P.2d 1151, 1163 (Ct. App. 1983). We have examined the record and conclude the district court did not abuse its discretion in denying the motion to strike Mr. Wade for cause.

Finally, Defendant objects to the denial of his motion to strike Mr. Anderson from the jury for cause. As Mr. Anderson was not empaneled, we need not consider the issue. *See State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App. 1994) ("In the absence of prejudice, there is no reversible error.").

## G.      Refusal to Quash Indictment

Defendant's seventh argument is that the district court erred by denying his motion to quash the Grand Jury Indictment. As support for this argument, he cites NMSA 1978, Section 31-6-8 (1983), which requires that "[a]ll proceedings in the grand jury room . . . shall be reported verbatim." Defendant's argument appears to be that because the transcripts of the audio recordings of the proceedings contain some "inaudibles," the statute was violated and the entire indictment should be quashed.

Initially, we note that review of this issue by extraordinary writ would have been preferable to the method pursued here. However, it is not clear that *State v. Gallegos* forecloses post-conviction review of the denial of a motion to quash an indictment where the grounds do not go to the absence of probable cause to indict. *See* 2009-NMSC-017, ¶ 19, 146 N.M. 88, 206 P.3d 993. At least some of our cases on this topic have been handled on direct appeal. *See State v. Baird*, 90 N.M. 678, 568 P.2d 204 (Ct. App. 1977).

*State v. Bigler* rejected a per se prejudice rule for Section 31-6-8 and held that to obtain a remedy for a violation of that section a defendant must show actual prejudice. 98 N.M. 732, 734, 652 P.2d 754, 756 (Ct. App. 1982); *see also State v. Weiss*, 105 N.M. 283, 285, 731 P.2d 979, 981 (Ct. App. 1986). Although Defendant generally claims he was prejudiced by not having a full record upon which he could

19

search for potential impeachment, he fails to point to instances of material fact from the transcript that might have allowed him to impeach where he was otherwise unable to impeach at trial. Furthermore, as Defendant did not supplement the record with the recording, we are unable to examine it ourselves, and cannot verify his argument below that the inaudibles might include multiple words. The burden is on Defendant to bring up a record sufficient for review on the issues he raises on appeal. *Franklin*, 78 N.M. at 129, 428 P.2d at 984. Defendant's argument that the grand jury relied upon the inaudible statements to find probable cause is, of course, foreclosed by his conviction. *See Gallegos*, 2009-NMSC-017, ¶ 19.

**H.    Cumulative Error**

"The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828. However, when there is no error, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211. Having found no error here, we conclude there is no cumulative error.

**III.    CONCLUSION**

20

For the foregoing reasons, we affirm the district court and Defendant's convictions.

**IT IS SO ORDERED**.

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**