2002-NMCA-107

57 P.3d 555

**In the Matter of ALBERTO L., a Child.**

No. 22,283.

Court of Appeals of New Mexico.

Aug. 20, 2002.

Certiorari Denied, No. 27,685, Oct. 4, 2002.

**2**

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellant.

Phyllis H. Subin, Chief Public Defender, Jennie Lusk, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

*OPINION*

WECHSLER, Judge.

{1} The State of New Mexico appeals the children's court ruling which suppressed evidence, on the ground of entrapment, that was obtained when a high school student purchased cocaine from another student in a transaction overseen by an assistant principal. We reverse because Child did not demonstrate, as part of his burden below, that he was not predisposed to sell the cocaine when he had the burden to do so and because objective entrapment does not apply to this case.

*Incidents at the School*

{2} On December 20, 2000, Gadsden High School was scheduled to close at noon because it was the last day of the fall semester. After 11:00 a.m., assistant principal Anthony Chavez removed a student, Charles, from his class based on a teacher's information that Charles had drugs in his possession. Chavez was in charge of the school's security and discipline, and the school maintained an aggressive anti-drug policy. Chavez and Miguel Martinez, a school security officer, found two tablets of Rohypnol, which Chavez referred to as "the date rape drug," in Charles' pockets. In an apparent effort to minimize his behavior, Charles told Chavez that he could "set [him] up with somebody on this campus right now who I know has cocaine[;] who is selling cocaine." Charles said it would only take ten minutes to do so. With authority from the school principal, Chavez pursued the matter because of the gravity of the problem of drugs in the school. He allowed Charles to leave the office and Charles returned in five minutes, stating that he had located a student who would sell cocaine for $10. Chavez and Martinez searched Charles and, after checking with the school principal, Chavez gave Charles two $5 bills to make the purchase.

{3} With Chavez and Martinez observing from the school cafeteria, Charles proceeded to a table outside the cafeteria and approached Child. Chavez saw Charles and Child shake hands and saw Charles nod to-

ward Chavez in a way Chavez interpreted to mean that something had taken place. Martinez saw Child put his hand in his pocket. Chavez and Martinez approached Charles and Child and escorted them to the office. Charles produced a package of cocaine. When Chavez inquired of Child whether he had anything improper in his possession, Child produced a bag with a small amount of marijuana from his shoe. Chavez and Martinez then searched Child and found two $5 bills in his pocket. Deputy Frank Sanchez was assigned by the Dona Ana Sheriff's Department to the school. Chavez called Deputy Sanchez into the office and turned over the investigation to him. Deputy Sanchez, in turn, called in Shannon Martin, a narcotics agent with the Las Cruces Police Department. Martin tested the substance sold to Charles, and it was positive for cocaine.

*Proceedings in District Court*

{4} The State filed a petition in children's court charging Child with trafficking cocaine, possession of marijuana, disorderly conduct, and resisting, evading, or obstructing an officer. Child filed a motion to suppress all evidence as a product of an unreasonable search and seizure violative of the United States and New Mexico Constitutions. Child contended that Chavez acted unreasonably as a school official in orchestrating the cocaine purchase and conspiring with Charles, a student, to act illegally, intruding on the rights of another student.

{5} The motion was heard the day before trial by a judge substituting for the children's court judge. At the hearing, Child's attorney additionally argued that Chavez acted unreasonably because he was acting as a law enforcement officer without training or authority. The State contended that Chavez acted reasonably under the totality of the circumstances. The children's court granted the motion for the lack of due process due to the entrapment of Child. It stated:

1. The Court finds that [Child], an alleged delinquent child, was unfairly induced into making a sale of cocaine on school grounds.

2. The Court finds [Child] sold cocaine to another child, Charles … and the mon-

ey Charles … used to purchase the cocaine was provided by the Assistant Principal Anthony Chavez.

3. The Court finds that [the] State has not presented any evidence of predisposition or tendency to commit the crime of selling drugs by [Child].

4. The Court finds that but for the "sting operation" of Assistant Principal Anthony Chavez, [Child] would not have committed the crime of selling cocaine.

5. The Court concludes … [Child] successfully raises the issue of entrapment in accordance with *State v. Vallejos,* 1997–NMSC–040, 123 N.M. 739, 945 P.2d 957, and has demonstrated his due process rights have been violated.

*Applicability of Law of Entrapment*

{6} The State initially argues on appeal that entrapment was not available to Child because the school officials involved in this case were not law enforcement officers or persons acting under the direction, influence, or control of law enforcement officers. However, the State did not make this argument to the children's court. Rather, in arguing below, the State justified the actions of the school officials as reasonable to combat the possession of drugs on campus under the totality of circumstances and on the basis of authority afforded school officials under *New Jersey v. T.L.O.,* 469 U.S. 325, 337–43, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). *See State v. Crystal B.,* 2001–NMCA–010, ¶ 14, 130 N.M. 336, 24 P.3d 771. The State did not present the children's court with the issue of whether entrapment applies to school officials because they are not connected with law enforcement. As a consequence, the State did not preserve the issue for appellate review. *See* Rule 12–216(A) NMRA 2002. Therefore, we limit our discussion to the application of the law of entrapment as it generally applies to law enforcement officers.

*Law of Entrapment*

{7} The law of entrapment in New Mexico is set forth in *Vallejos.* The children's court relied on *Vallejos* in reaching its conclusion to grant the motion to suppress. In *Vallejos,*

**4**

our Supreme Court discussed the subjective and objective forms of entrapment, noting that it had adopted the subjective standard in *State v. Fiechter*, 89 N.M. 74, 77, 547 P.2d 557, 560 (1976), and that it would thereafter additionally recognize two forms of objective entrapment, factual and normative. *Vallejos*, 1997–NMSC–040, ¶¶ 5, 10, 123 N.M. 739, 945 P.2d 957.

*Subjective Entrapment*

{8} The subjective standard focuses on the intent or predisposition of a defendant to commit the crime. *Id.* ¶ 5. Government officials engage in subjective entrapment when they originate the criminal design and implant the disposition to commit the crime in the mind of an innocent person in order to enable prosecution. *Id.* Government officials may not manufacture a crime and engage in unfair inducement. *See* UJI 14–5160 NMRA 2002; *Fiechter*, 89 N.M. at 76, 547 P.2d at 559. However, the law of subjective entrapment does not prevent government officials from engaging in undercover operations in investigating criminal activity and enforcing the law. *See Fiechter*, 89 N.M. at 76, 547 P.2d at 559 (" 'Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer.' " (quoting *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958))). Nor does the law of subjective entrapment prevent government officials from providing the opportunity to a person already disposed to commit the crime. *Vallejos*, 1997–NMSC–040, ¶ 5, 123 N.M. 739, 945 P.2d 957.

{9} Generally, a defendant raises entrapment as a defense at trial or by motion to dismiss. *See id.* ¶ 14 (explaining that the court will determine, based on the evidence, whether to grant a directed verdict or to allow a jury instruction). When raised as a defense, entrapment vitiates the prosecution. If government officials have overstepped or engaged in subjective entrapment, the trier of fact may not return a guilty verdict. *See* UJI 14–5160. When the defendant presents evidence of unfair inducement and the defense of subjective entrapment is presented

to the trier of fact, the state has the burden to persuade the trier of fact beyond a reasonable doubt that the defendant was not unfairly induced to commit the crime. *Id.*

{10} In this case, although Child also filed a motion to dismiss, the children's court used entrapment grounds to grant Child's motion to suppress. A defendant has a similar burden "of coming forward with evidence sufficient to raise an issue as to the illegal search and seizure claimed" in a motion to suppress. *See State v. Gardner*, 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App. 1980) (holding that the defendant has burden on motion to suppress to present evidence regarding the illegality of the search and seizure claimed in the motion) (internal quotation marks and citation omitted).

{11} The burden of going forward with evidence is significant to the issue of subjective entrapment in this case. Chavez and Charles initiated the contact with Child, soliciting criminal behavior. Child had cocaine and sold it to Charles shortly after being contacted by Charles. There was no evidence concerning lack of predisposition: that Child was not ready and willing to sell cocaine when given the opportunity. *See* UJI 14–5160; 2 Wayne R. LaFave, *Criminal Procedure* § 5.2(a), at 408 (2d ed. 1999) ("A defendant is considered to have been predisposed if he was 'ready and willing to commit the crimes whenever an opportunity was afforded.' " (quoting *United States v. Dearmore*, 672 F.2d 738, 741 (9th Cir.1982))).

{12} The children's court found that Child was unfairly induced, that he would not have sold the cocaine without the "sting operation" of Chavez, and that the State did not present "evidence of predisposition or tendency to commit the crime of selling drugs." However, Child had the burden of presenting evidence to the children's court that Child was not predisposed to sell cocaine without the actions of school officials. Absent additional facts, Child did not meet his burden. The evidence with regard to subjective entrapment only demonstrates that Chavez gave Child the opportunity to make the sale. *See Baca v. State*, 106 N.M. 338, 340, 742 P.2d 1043, 1045 (1987) (stating that defendant's sale of cocaine supplied by undercover agent

in transaction arranged by undercover agent did not entail subjective entrapment); *Gardner*, 95 N.M. at 175, 619 P.2d at 851 (discussing burden of proof on motion to suppress). We reverse the children's court's order to the extent it is based on subjective entrapment.

*Objective Entrapment*

{13} Under the factual inquiry of objective entrapment as adopted by *Vallejos*, the question is whether the actions of government officials create a substantial risk that an ordinary person who was not so predisposed would commit a crime. *Vallejos*, 1997–NMSC–040, ¶¶ 13, 14, 123 N.M. 739, 945 P.2d 957. Because the analysis is objective, not subjective, the defendant's predisposition is not relevant. *Id.* ¶ 13.

{14} Child argues that the children's court's findings of fact under this form of objective entrapment require deferential review by this Court. However, the children's court's relevant findings of fact related only to Child's predisposition. It did not make findings of fact that indicated it applied an objective factual inquiry in this case.

{15} The normative inquiry of objective entrapment focuses on the standards of proper investigative conduct. *Id.* ¶ 15. Certain conduct may be sufficiently fundamentally unfair or outrageous as to violate due process principles even though it does not create a substantial risk that an ordinary person not predisposed to commit a crime would do so. *Id.* ¶¶ 15, 16. *Vallejos* observes that government officials can violate a defendant's due process rights by engaging in investigative activity that employs unconscionable methods or advances an illegitimate purpose. *Id.* ¶ 18. Our Supreme Court recognized, however, that an objective normative inquiry for due process violations "should be used sparingly and reserved for 'only the most egregious circumstances.'" *Id.* ¶ 22 (quoting *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir.1992)). The application of normative standards of objective entrapment is a question of law which we review de novo. *See State v. Bonilla*, 1999–NMCA–096, ¶ 6, 127 N.M. 566, 985 P.2d 168, *rev'd on other grounds*, 2000–NMSC–037, 130 N.M. 1, 15 P.3d 491.

{16} The children's court concluded that Child's due process rights had been violated. It did not make any findings that related to an objective normative analysis and it does not appear that it applied an objective normative analysis. Child argues in his answer brief that the school officials violated his due process rights by engaging in unconscionable investigative methods that manufactured the crime and pursued an illegitimate purpose. In support of this argument, Child contends that the undercover activity was unnecessary because Chavez knew that he could search a student whom he reasonably suspected of illegal drug possession. *See T.L.O.*, 469 U.S. at 340–41, 105 S.Ct. 733 (holding that test for search by school official proper if supported by reasonable suspicion to believe search will yield evidence that student violated rule or law and search is reasonably related to its objective); *State v. Tywayne H.*, 1997–NMCA–015, ¶ 8, 123 N.M. 42, 933 P.2d 251 (same). Child further contends that the undercover activity unnecessarily exposed Charles, who had violated the school's drug policy, to further illegal activity and subjected Child to a drug transaction. Finally, Child argues that the undercover activity unnecessarily endangered other students or involved them as witnesses to an illegal drug transaction at school.

{17} As we have discussed, the evidence indicates that the school officials conducted the investigation in order to enforce the school's drug free policy. School officials have the authority to enforce school rules on school grounds when students are present. *See* NMSA 1978, § 22–10–5(D) (1975); *Crystal B.*, 2001–NMCA–010, ¶ 17, 130 N.M. 336, 24 P.3d 771. Chavez was concerned about the availability of illegal drugs at the school through drug trafficking. He was enforcing the school's drug policy. There was no evidence about the presence of other students.

{18} At oral argument, Child additionally argued that school officials could not, under any circumstances, conduct such an undercover operation without violating objective normative entrapment principles because school officials do not have the training of

**6**

law enforcement officials. This Court has recognized the potential danger of school officials searching students for dangerous weapons without the proper training. *See In re Josue T.*, 1999–NMCA–115, ¶ 21, 128 N.M. 56, 989 P.2d 431. In *In re Josue T.* and *Tywayne H.* we discussed the different purposes of a search conducted by school and law enforcement officials, noting that school officials can search a student " 'to maintain order and discipline in the school,' " whereas a law enforcement officer searches " 'to obtain evidence for criminal prosecutions.' " *In re Josue T.*, 1999–NMCA–115, ¶ 20, 128 N.M. 56, 989 P.2d 431 (quoting *Tywayne H.*, 1997–NMCA–015, ¶ 13, 123 N.M. 42, 933 P.2d 251). Despite the different purposes, both types of officials have the authority to conduct a search in appropriate circumstances. *See Josue T.*, 1999–NMCA–115, ¶ 20, 128 N.M. 56, 989 P.2d 431. We do not find a basis for an absolute ban on school officials taking action within the scope of Section 22–10–5(D) because the action is also within the proper scope of law enforcement.

{19} Child further contends that the undercover operation cannot be sustained because the school officials did not, as law enforcement officers would have, take verifiable steps such as marking the bills used for illegal purposes, searching Charles at each stage, and recording the conversation between Child and Charles. However, any deficiency in the procedure in this case relates to the factual reliability of the investigation, rather than its propriety.

{20} Overall, we believe that adoption of Child's arguments regarding objective entrapment would unduly restrict the discretion of the school officials in this case to exercise their official authority under Section 22–10–5(D). Given the purposes of the investigation to enforce the school's drug policy and to prohibit the exchange of drugs on campus, as well as the limited time in which to conduct the investigation because school was closing for winter break within the hour, the school officials did not exercise their discretion in performing the investigation in a manner so extreme that it violated constitutional due process principles of fundamental fairness. *See Vallejos*, 1997–NMSC–040, ¶ 22, 123 N.M. 739, 945 P.2d 957; *cf. T.L.O.*, 469 U.S. at 340–41, 105 S.Ct. 733.

*Conclusion*

{21} We reverse the children's court's grant of child's motion to suppress and remand to the children's court.

{22} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and CYNTHIA A. FRY, Judge.