This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                                                                                  **NO. 32,983**

**DAVID BELKNAP,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** The State appeals from the district court's grant of a motion to dismiss in favor of Defendant David Belknap, who was charged with two counts of distributing marijuana, contrary to NMSA 1978, Section 30-31-22(A)(1)(a) (2011). The district court granted the motion on the sole basis of normative objective entrapment. The State raises two issues on appeal: (1) it was error to decide an uncorroborated, factually contested entrapment defense in favor of Defendant as a matter of law; and (2) if normative entrapment could have been decided as a matter of law, it should have been decided in favor of the State. Defendant counters that there was no error below and, alternatively, that since the facts also meet the elements of subjective entrapment, we can affirm according to the "right for any reason" doctrine. *See State v. Allen*, 2014-NMCA-111, ¶ 6, 336 P.3d 1007 (internal quotation marks and citation omitted), *cert. denied*, 2014-NMCERT-010, 339 P.3d 425. We reverse.

**BACKGROUND**

**{2}** At the hearing on his motion to dismiss for entrapment, Defendant described the series of events that led him to sell marijuana on two occasions to Marc Brusuelas, a narcotics agent working undercover for the Otero County Sheriff's Office. Defendant testified that in the month leading up to the transactions, he received numerous, persistent phone calls, text messages, and a voice message from Martín Sanchez, who was his high school classmate and former co-worker. In these communications, Sanchez, who was working as a confidential informant for Agent

2

Brusuelas and the Sheriff's Office, repeatedly asked Defendant if he could get him any marijuana, though Defendant testified that he was only personally using marijuana, was not dealing it, and had never sold drugs to Sanchez in the past. Defendant mostly avoided Sanchez's calls, but over time the communications became more urgent, and Sanchez grew increasingly angry. On one occasion, he called Defendant from an unknown number and asked for marijuana, saying that his cousin had back pain and was "hurting real bad," which appealed to Defendant's sympathies as a victim of chronic pain himself. But, despite this plea, Defendant steadfastly refused to get involved.

{3} On October 17, 2011, Sanchez showed up at Defendant's home unannounced, which was intimidating to Defendant, who knew of Sanchez's reputation as "a mean person," who "likes to retaliate," slashes people's tires, burns people's houses down, and has physically assaulted people in the past. In the wake of this visit, Defendant "finally caved into [Sanchez's] pressure" and agreed to sell him marijuana. Defendant testified that he agreed to sell the drugs in order to stop the harassment from Sanchez and because he felt both intimidated by and sorry for Sanchez's cousin. In the following days, Sanchez and his "cousin," who was actually Agent Brusuelas working undercover, bought $100 and $60 worth of marijuana from Defendant in two transactions.

3

{4}     The State's case sought to undermine any notion that Defendant was an innocent citizen, only coerced into selling drugs out of fear and sympathy. The State's only witness, Agent Brusuelas, had no direct knowledge of the nature of the communications between Defendant and Sanchez, but he testified that Defendant's demeanor during both transactions was "pretty relaxed, pretty comfortable with [Brusuelas's] presence" and that Defendant's conduct was consistent with that of a drug dealer and not a person operating out of fear. The State also played an audio recording of the second transaction, during which Defendant can be heard inducing Agent Brusuelas to purchase a larger quantity of marijuana:

**Defendant:** You just needed sixty, right?

**Brusuelas:** [Sanchez] says a forty?

        . . . .

**Defendant:** You get a better deal. . . you get a half gram for free, instead of just buying it by the gram.

**Brusuelas:** Alright.

**Defendant:** You want it for sixty then?

**Brusuelas:** Yeah, sure. I'll take what you got.

**Defendant:** Yea cause this gets you three and a half grams and a forty just gets you two, you know what I mean. You get like an extra half gram for free.

Defendant can also be heard on the recording attempting to solicit future business from Agent Brusuelas:

> **Defendant:** I should be getting some better tomorrow. . . . My guy has been running out lately. . . . He's got the Washington connect, bro, and like, I got Cali love, but Washington . . . mountain men grow that . . .
>
> **Brusuelas:** When are you gonna get some of that?
>
> **Defendant:** Either tomorrow or the next day. . . . As soon as I get a phone call I normally just send a text out and tell them "goods here."

Agent Brusuelas then testified that Defendant gave him his personal cell phone number to set up future deals, and later, contrary to Defendant's testimony, Defendant introduced Agent Brusuelas directly to his supplier.

**{5}** The district court ultimately concluded that "[t]he State presented no evidence which called Defendant's credibility into question, nor which disputed any of Defendant's assertions." In its order granting the motion to dismiss, the court expressed concern that "[p]estering someone who was not engaged in drug sales into selling drugs through intimidation, appeals to past friendship, and appeals to help someone suffering from a medical condition does not serve to curb crime and constitutes police conduct that exceeds the standards of proper investigation." The State timely appealed.

**DISCUSSION**

**Overview of Entrapment**

{6}     New Mexico recognizes subjective and objective forms of entrapment. *State v. Vallejos*, 1997-NMSC-040, ¶ 10, 123 N.M. 739, 945 P.2d 957. The subjective defense is available "when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Id.* ¶ 5 (internal quotation marks and citation omitted). The defense is not available if the defendant was already disposed to commit the crime. *Id.* Thus, under the subjective standard, "the focal issue is the intent or predisposition of the defendant to commit the crime." *Id.* (internal quotation marks and citation omitted).

{7}     The broader, objective defense, can be demonstrated in two ways, one factual and one normative:

> [I]f a jury finds as a matter of fact that police conduct created a substantial risk that an ordinary person not predisposed to commit a particular crime would have been caused to commit that crime, *or* if the trial court rules as a matter of law that police conduct exceeded the standards of proper investigation, then criminal charges should be dismissed.

*Id.* ¶ 11. While factual entrapment focuses on "the likely effect of police conduct on a hypothetical person not predisposed to commit the crime[,]" the focus of the normative inquiry is on the standards of proper investigative conduct, particularly

6

prohibiting investigative activity that employs unconscionable methods or advances illegitimate purposes. *Id.* ¶¶ 12, 16-18. Thus, under the normative component,

> the district court must carefully scrutinize both the methods and purposes of police conduct to determine whether police tactics offend our notions of fundamental fairness, or are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.

*State v. Shirley*, 2007-NMCA-137, ¶ 17, 142 N.M. 765, 170 P.3d 1003 (alteration, internal quotation marks, and citation omitted). In this case, the district court dismissed the charges against Defendant on the ground that "the police conduct exceeded the standards of proper investigation"—a finding of normative objective entrapment as a matter of law. Since there was no evidence presented that the police advanced an illegitimate purpose, we construe the district court's order as a finding of unconscionable methods.

{8}     *Vallejos* provides a list of helpful "indicia of unconscionability[,]" which, in relevant part, includes

> an extreme plea of desperate illness, an appeal based primarily on sympathy or friendship, persistent solicitation to overcome a defendant's demonstrated hesitancy, the use of . . . physical or psychological coercion to induce the commission of a crime, . . . unjustified intrusion into citizens' privacy and autonomy, . . . excessive involvement by the police in creating the crime, [and] the manufacture of a crime from whole cloth[.]

1997-NMSC-040, ¶ 18 (alteration, internal quotation marks, and citations omitted). A finding of normative entrapment is "an extreme remedy for extreme government

7

behavior." *Id.* ¶ 20. "[T]he question whether a given undercover operation is poor police strategy or a misguided waste of taxpayer money is beyond the scope of the inquiry." *Id.* ¶ 21 (internal quotation marks and citation omitted). On appeal, we review de novo the application of normative standards of objective entrapment. *In re Alberto L.*, 2002-NMCA-107, ¶ 15, 133 N.M. 1, 57 P.3d 555.

**Credibility Issues and Factual Disputes**

{9}     While "the determination of the proper standards of police investigation is a question of law and policy to be decided by the courts in the first instance[,]" our Supreme Court has stated that "the jury may resolve factual disputes where credibility is an issue or where there is conflicting evidence pertaining to what events transpired." *Vallejos*, 1997-NMSC-040, ¶¶ 16, 20 (alteration, internal quotation marks, and citation omitted); *see also* UJI 14-5161 NMRA committee commentary ("Ordinarily, the judge decides the issue whether the alleged conduct, if it occurred, was acceptable as a matter of law, leaving for the jury the issue of whether this misconduct did occur."). In *Shirley*, we applied this language to uphold the lower court's denial of a motion to dismiss for objective entrapment because the defense hinged entirely on the defendant's credibility. 2007-NMCA-137, ¶¶ 21, 30. We cited "our general understanding that the jury determines the credibility of witnesses" and rejected the notion that a defendant's uncorroborated testimony must be believed. *Id.* ¶¶ 28-29. We specifically declined to adopt "the per se rule," established in *United States v. Bueno*,

447 F.2d 903, 906 (5th Cir. 1971), which would have required the State to call its confidential informant to the stand to directly contradict the defendant's version of events in order to survive a motion to dismiss for entrapment as a matter of law. *Shirley*, 2007-NMCA-137, ¶¶ 25-26, 28.

{10}     In this case, as in *Shirley*, Defendant presented uncorroborated testimony that the police exceeded the standards of proper investigation. As in *Shirley*, "[w]here a defendant's claim of entrapment is uncorroborated, the question of [a d]efendant's credibility is best left to the jury to decide." *Id.* ¶ 30. We do not opine as to whether a district court must be automatically reversed on appeal for weighing credibility and granting a defendant's motion on a factually contested entrapment defense as a matter of law, or, as the States calls it, "invad[ing] the province of the jury." *See Vallejos*, 1997-NMSC-040, ¶ 20 ("[T]he jury *may* resolve factual disputes." (emphasis added)). Instead, we conclude only that the district court erred when it found that "[t]he State presented no evidence which called Defendant's credibility into question, nor which disputed any of Defendant's assertions[,]" and then ruled as a matter of law on that basis. The credibility of Defendant's uncorroborated testimony was necessarily in question according to *Shirley.* Against Defendant's version of events, including his testimony that he was harassed by Sanchez, that he was not a drug dealer, that he was operating out of fear of both Sanchez and Agent Brusuelas, and that he sought to violate the law to the minimum extent possible, the State presented testimony that

9

Defendant seemed "pretty relaxed, pretty comfortable" selling drugs. The State's corroborating audio recording evinced Defendant attempting to negotiate higher quantity sales and the future sales of superior product to the purportedly intimidating Agent Brusuelas. This evidence plainly contradicts the thrust of Defendant's entrapment claim—that Sanchez and Brusuelas exceeded the bounds of proper investigation by continually harassing and intimidating Defendant into breaking the law. Thus the only apparent explanation for the district court's finding that the State did not challenge Defendant's credibility or create any factual dispute is that the court implicitly faulted the State for not calling Sanchez to testify. In other words, it applied the "per se" rule from *Bueno* that we rejected in *Shirley*, 2007-NMCA-137, ¶ 28. It did so in error.

**Sufficiency of the Evidence for an Entrapment Instruction**

{11}     The State argues that Defendant should not get a jury instruction on normative entrapment absent additional proof on remand. *See Vallejos*, 1997-NMSC-040, ¶ 34 (stating that the instruction should be given "assuming the production of sufficient evidence to support the defense"). We disagree. Viewing the evidence in the light most favorable to Defendant, the police manufactured a crime "from whole cloth" contrary to *Vallejos*. *Id.* ¶ 18 (internal quotation marks and citation omitted). Defendant's testimony, if credited, establishes that the police used a confidential informant with a reputation for retaliation and violence to persistently and angrily

10

harass Defendant over the course of a month by calling him "over and over and over again," sending him unsolicited text messages from unknown phone numbers, and, when these efforts failed, showing up at his home unannounced and uninvited. The harassment continued despite Defendant's steadfast refusal to engage in the sale of marijuana. The State argues that " '[p]estering' does not rise to the level of entrapment," but our Supreme Court has specifically cited "persistent solicitation to overcome a defendant's demonstrated hesitancy" as an example of an unconscionable method. *Id.* While credibility issues require reversal of the district court's decision to grant Defendant's motion as a matter of law, we find sufficient evidence to support a normative entrapment instruction (UJI 14-5161) for the jury. *See Vallejos*, 1997-NMSC-040, ¶ 34

**Subjective Entrapment**

{12}    The parties' final dispute is whether we can affirm the district court's ruling as a matter of law on the alternative basis of subjective entrapment. Although the issue of subjective entrapment was neither argued nor considered at the evidentiary hearing, "we will uphold the decision of a district court if it is right for any reason." *Allen*, 2014-NMCA-111, ¶ 6 (internal quotation marks and citation omitted).

{13}    The trier of fact typically determines whether subjective entrapment has occurred by considering whether the defendant was already predisposed to commit the crime. *State v. Fiechter*, 1976-NMSC-006, ¶ 11, 89 N.M. 74, 547 P.2d 557; *Alberto*

11

*L.*, 2002-NMCA-107, ¶ 8. In *State v. Schaublin*, we stated that "[u]nder rare circumstances, the issue of subjective entrapment may be resolved as a matter of law, in which instance, the fact-finder would not consider the defendant's predisposition." 2015-NMCA-024, ¶ 12, 344 P.3d 1074, *cert. denied*, 2015-NMCERT-002, 346 P.3d 370. Despite this language, we can locate no New Mexico case that has actually applied the doctrine as a matter of law, and Defendant fails to explain why this case, which involves disputed facts, involves the "rare circumstances" alluded to in *Schaublin*. This is not an appropriate situation to rule on subjective entrapment as a matter of law, *see Sherman v. United States*, 356 U.S. 369, 373 (1958) (ruling on the issue as a matter of law only because the Court was "not choosing between conflicting witnesses, nor judging credibility"), particularly on appeal via application of the right for any reason doctrine, *see State v. Wilson*, 1998-NMCA-084, ¶ 17, 125 N.M. 390, 962 P.2d 636 ("Appellate courts usually apply the right for any reason basis of affirmance to strictly legal questions."). Defendant's testimony that he was not already disposed to deal drugs when the investigation began is in doubt. Accordingly, the issue of subjective entrapment, like the issue of objective entrapment, is for the jury in this case.

**CONCLUSION**

12

{14} The decision of the district court is reversed and remanded for proceedings consistent with this Opinion.

{15} **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**