This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36756

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ORLANDO J. GUILEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Orlando Guilez appeals his conviction following a jury trial for one count of trafficking a controlled substance, OxyContin (oxycodone), contrary to NMSA 1978, Section 30-31-20 (2006). On appeal, Defendant argues that the district court erred in failing to instruct the jury on the defense of entrapment. We affirm.

**BACKGROUND**

**{2}** In July 2014, Defendant was living at a Motel 6 in Alamogordo and was in a romantic relationship with Lisa Torres. Torres, who suffered from cancer, had given several of her OxyContin tablets to Defendant upon his request, and, two days later, she called Defendant to ask for some of his in return. Defendant responded that, while he had obtained a prescription for OxyContin from a doctor, he was unable to fill it because he did not have any money. According to Defendant, Torres told him that she would "help [him] out by giving [him] the money," and he told her, if she did that, he would be able to "pay [her] back her pills."

**{3}** Although Defendant was unaware of it at the time, Torres was working as a confidential informant. She apprised Deputy Matthew Mirabel, an undercover police officer, that he could obtain OxyContin from Defendant. Torres then called Defendant to inform him she was not feeling well, but she would send her cousin to take Defendant to the pharmacy and pay for the prescription. Deputy Mirabel testified that, when he arrived at Defendant's motel room, pretending to be Torres's cousin, he expected to purchase OxyContin from Defendant there, but that Defendant told him they would have to go to the pharmacy to fill the prescription. Deputy Mirabel drove Defendant to a nearby Walgreens, gave him $160, and Defendant filled his prescription for OxyContin.

**{4}** The testimony concerning what happened after Defendant returned to Deputy Mirabel's vehicle is in conflict. According to Defendant, he tore off a portion of the prescription bag, placed six tablets in it, handed it to Deputy Mirabel, and told Deputy Mirabel to drive him to Torres's residence so he could give the tablets to her. Defendant testified that Deputy Mirabel said he was in a hurry and would deliver the pills to Torres himself, and instead drove Defendant back to the motel. According to Deputy Mirabel, Defendant handed him ten OxyContin tablets in a portion of the prescription bag and, upon arriving back at Motel 6, told Deputy Mirabel: "Make sure you give two of those [pills] to Lisa [Torres]." Defendant was arrested after being charged with one count of trafficking a controlled substance (OxyContin).

**{5}** At the conclusion of the presentation of evidence at trial, Defendant initially requested a jury instruction on subjective entrapment, but later withdrew his request. Defendant never asked for an instruction on objective entrapment. Defendant was convicted of trafficking a controlled substance and this appeal followed.

## DISCUSSION

### I. Standard of Review

**{6}** "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citations omitted). A claim of entrapment is an affirmative defense and, as a general matter, "the failure to instruct upon a specific defense cannot be complained of unless the defendant has tendered a proper

instruction on the issue." *State v. Selgado*, 1966-NMSC-069, ¶ 4, 76 N.M. 187, 413 P.2d 469.

**{7}**     Because Defendant never submitted a request for an objective entrapment instruction, that issue was not properly preserved and we review it only for fundamental error. *See Benally*, 2001-NMSC-033, ¶ 12. Whether error was preserved with respect to subjective entrapment is less apparent. Following the close of evidence at trial, Defendant orally requested an instruction on subjective entrapment, properly citing to UJI 14-5160 NMRA. However, following a colloquy with the district court, during which the court expressed skepticism as to whether Defendant's theory of entrapment was supported by the evidence presented at trial, defense counsel withdrew his request. Because we conclude the district court did not commit reversible error in declining to instruct the jury on subjective entrapment, we need not decide whether Defendant's withdrawn request for the instruction adequately preserved the issue for review.

## II.     Defendant Was Not Entitled to a Jury Instruction on Subjective Entrapment

**{8}**     We first address whether the district court committed reversible error in failing to instruct the jury on subjective entrapment. When the evidence at trial supports the giving of an instruction, the failure of the court to do so constitutes reversible error. *State v. Trammel*, 1983-NMSC-095, ¶ 6, 100 N.M. 479, 672 P.2d 652.

**{9}**     The focus of subjective entrapment "is the intent or predisposition of the defendant to commit the crime." *State v. Vallejos*, 1997-NMSC-040, ¶ 5, 123 N.M. 739, 945 P.2d 957 (internal quotation marks and citation omitted). "Subjective entrapment occurs when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Id.* (internal quotation marks and citation omitted). However, if law enforcement merely provides the opportunity for a predisposed defendant to commit the crime, the subjective entrapment defense fails. *See id.*; *see also State v. Rodriguez*, 1988-NMCA-069, ¶ 22, 107 N.M. 611, 762 P.2d 898 (providing that where evidence indicates the defendant was merely given an opportunity to commit the crime with no undue persuasion or enticement, there is no factual basis for entrapment defense). A defendant "is entitled to a jury instruction on his theory of the case if there is evidence to support it." *State v. Garcia*, 1968-NMSC-119, ¶ 8, 79 N.M. 367, 443 P.2d 860. However, if a defendant fails to introduce any evidence to show his lack of predisposition to commit the crime he is charged with, he is not entitled to an instruction on the affirmative defense of subjective entrapment. *See State v. Martinez*, 1996-NMCA-109, ¶ 32, 122 N.M. 476, 927 P.2d 31. It is the defendant's burden to produce evidence of a lack of predisposition. *See In re Alberto L.*, 2002-NMCA-107, ¶¶ 10-11, 133 N.M. 1, 57 P.3d 555.

**{10}**     Defendant claims the district court should have instructed the jury on subjective entrapment because Defendant was not predisposed to commit this crime, but rather "tricked into committing the offense [of trafficking] by the woman he loved and her police handler." He contends that Torres "originally trafficked narcotics to [Defendant,]" thereby

"creating an obligation that [Defendant] sought to repay in the transaction for which he was convicted." We disagree.

**{11}** Defendant's trial testimony was that he borrowed several OxyContin tablets from Torres, that Torres subsequently asked him to return the medication, and that he felt obligated to do so. By its own terms, this account makes clear that it was Defendant who initiated the series of transactions and communications that led to his trafficking a controlled substance. He introduced no evidence that Torres ever offered OxyContin to him, much less that she did so in an effort to induce him to engage in an illegal transaction.

**{12}** Nor did Defendant introduce any evidence that Torres or Deputy Mirabel either used, or needed to use, any form of inducement to convince Defendant to commit the crime of trafficking. *See State v. Schaublin*, 2015-NMCA-024, ¶ 23, 344 P.3d 1074 (holding that where the defendant avails himself of an opportunity presented by police to commit a crime, and the opportunity is devoid of inducement or overreaching, the entrapment defense fails). Defendant's initial telephone call with Torres indicated his willingness to transfer several OxyContin pills to her, provided he could obtain the money to fill his prescription. In sending Deputy Mirabel to Defendant's residence, Torres merely provided the opportunity for Defendant to commit the offense that he had expressed a predisposition to commit. *See Alberto L.*, 2002-NMCA-107, ¶¶ 10-12 (holding that, where a defendant introduces evidence that law enforcement has provided an opportunity to commit a crime, but fails to present any evidence showing a lack of predisposition to do so, the defendant has not established a factual basis for the defense of subjective entrapment).

**{13}** Because Defendant failed to produce any evidence of his lack of predisposition to commit the crime of trafficking, or any evidence of improper inducement, the district court did not commit reversible error in declining to instruct the jury on subjective entrapment.

## III. Defendant Was Not Entitled to a Jury Instruction on Objective Entrapment

**{14}** We next address Defendant's claim that the district court's failure to instruct the jury on objective entrapment constituted fundamental error. When we review jury instructions for fundamental error, we will not reverse the jury verdict unless doing so is "necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016; *see State v. Barber*, 2004-NMSC-019, ¶¶ 15-18, 135 N.M. 621, 92 P.3d 633 (describing the doctrine of fundamental error as applying only where an obviously innocent defendant has been convicted or where a mistake in process is so unfair as to undermine the integrity of the judicial system if left unchecked). "The first step in reviewing for fundamental error is to determine whether an error occurred." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. Only if we find that error occurred do we consider whether it was fundamental. *Id.*

**{15}** The defense of objective entrapment is used when "police conduct exceeded the standards of proper investigation." *Vallejos*, 1997-NMSC-040, ¶ 11. "[O]bjective entrapment has two distinct components, one factual and the other normative." *Id.* ¶ 10. A finding of either component will suffice to establish a defense of objective entrapment. *See id.* ¶ 11. Defendant argues only that the district court erred in failing to instruct on the normative theory, and we limit our discussion accordingly.

**{16}** Under the normative theory, the district court examines whether the methods and purposes of police conduct "exceeded the standards of proper investigation," *id.* ¶ 15, or are so outrageous as to violate due process principles. *Id.* ¶ 16. The inquiry does not examine the wisdom of law enforcement's strategy or its use of resources, but only whether due process has been violated. *Id.* ¶ 21. Police conduct exceeds the standards of proper investigation when it deploys unconscionable methods or pursues illegitimate purposes.[1] *See id.* ¶ 17. *See generally State v. Buendia*, 1996-NMCA-027, ¶ 9, 121 N.M. 408, 912 P.2d 284 (stating that objective entrapment defense is premised on policy against permitting police to foster crime). Law enforcement officers may be found to have exceeded the proper standards of investigation where they either created or used a defendant's vulnerabilities or relationships in a patently unfair manner. *See State v. Sheetz*, 1991-NMCA-149, ¶ 21, 113 N.M. 324, 825 P.2d 614 (holding that there was objective entrapment where the defendant claimed that a police informant gave him free heroin until he was addicted, and then used his addiction to persuade him to purchase drugs for an undercover police officer); *see also Buendia*, 1996-NMCA-027, ¶¶ 5, 10-11 (holding that a defendant charged with unlawfully dealing in federal coupons was entitled to an objective entrapment instruction because he had produced evidence at trial that an undercover officer had used a story about his child being ill and then dying in order to overcome the defendant's resistance). However, we have also held that, where there was no evidence that the officer exploited a relationship or otherwise used it against the defendant in an unfair manner, the conduct of law enforcement was not unconscionable. *See State v. Bonilla*, 1999-NMCA-096, ¶ 13, 127 N.M. 566, 985 P.2d 168 (holding that use of the defendant's child as a language interpreter to facilitate drug sale did not constitute outrageous conduct supporting dismissal on grounds of objective entrapment, where the child appeared willing to assist in the transaction and there was no evidence of police officers' pattern of encouraging minors to inform on their parents), *vacated in part on other grounds by* 2000-NMSC-037, 130 N.M. 1, 15 P.3d 491.

**{17}** The normative inquiry is generally conducted by the district court as a matter of law, *Vallejos,* 1997-NMSC-040, ¶ 16, and if the district court finds objective entrapment as a matter of law, the charges against the defendant must be dismissed, *id.* ¶19. However, if the district court concludes that there is insufficient evidence to dismiss the case, but determines that a different fact-finder might make a different determination, the court may give an instruction on objective entrapment to the jury, provided there is sufficient evidence to support the defense. *Id.* ¶ 34; *see State v. Shirley*, 2007-NMCA-137, ¶ 19, 142 N.M. 765, 170 P.3d 1003.

---

1 Defendant does not argue that law enforcement pursued illegitimate purposes in this case, and we do not consider that issue on appeal.

**{18}** On appeal, Defendant offers no specific account of how police conduct in this case exceeded the bounds of proper investigation, but instead contends that "several . . . indicia [of unconscionability] are relevant[.]" Specifically, he asserts that: (1) Torres supplied Defendant with prescription pain medication during a time when he had an injury; (2) Defendant was aware of Torres's health concerns, including her battle with cancer; (3) Torres was Defendant's lover; and (4) the State created the crime by instilling in Defendant an obligation to repay Torres by providing her with OxyContin, and then providing him with the transportation and the money to complete the transaction. We disagree with Defendant's assertions.

**{19}** Defendant fails to point to anything in his testimony or elsewhere in the record that indicates that Torres or Deputy Mirabel used Defendant's relationship with Torres or Defendant's injury in an unfair manner in order to induce him to commit the offense. Indeed, the record reveals that Defendant readily agreed to transfer a portion of his prescribed medication to Torres, and that he provided either six or ten OxyContin tablets to Deputy Mirabel immediately upon returning from Walgreens, without requiring any additional encouragement from the officer. We also reject Defendant's claim that law enforcement created the mens rea and actus reus of the crime of trafficking in this case. As we have discussed, any obligation Defendant felt to repay Torres was created when he asked to borrow OxyContin from her two days prior to the transaction at issue.

**{20}** Because Defendant failed to produce any evidence that law enforcement used his injury, his romantic relationship with Torres, or his knowledge of Torres's illness against him in order to unfairly induce him to act, he failed to carry his burden of production in establishing that the police used unconscionable methods against him. Accordingly, the district court's failure to sua sponte instruct the jury on objective entrapment was not fundamental error.

**CONCLUSION**

**{21}** For the foregoing reasons, we affirm.

**{22} IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**