This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36982

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**IVAN MUSTELIER-SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Ivan Mustelier-Sanchez appeals his conviction for trafficking cocaine, a controlled substance, contrary to NMSA 1978, Section 30-31-20(A)(2)(a) (2006). Defendant argues that the district court erred by failing to instruct the jury on subjective entrapment. We reverse.

### BACKGROUND

**{2}** This case arises from a narcotics transaction that was arranged by the Pecos Valley Drug Task Force as a controlled buy. The transaction involved a confidential informant, a confidential source, and Defendant. At the time of the transaction, Defendant had been working as a mechanic and living on and off with Isabel Shelton. Although Defendant was unaware of it at the time, Shelton was working as a confidential informant for the Task Force. Irigous Lindsey was the third party to the transaction. He was a professional confidential source who traveled around the country assisting various law enforcement entities with undercover operations.

**{3}** During debriefing by the Task Force, Shelton volunteered the names of several potential targets, including Defendant. The Task Force then planned an operation targeting Defendant as a potential trafficker. On the day of the transaction, members of the Task Force met with Shelton and Lindsey to arrange for the buy to occur in the parking lot at the La Tienda grocery store. Shelton called Defendant, who was working at her home, and asked him to meet her at La Tienda. Although their testimony conflicted as to whether Defendant lived in Shelton's house, Shelton and Defendant both testified that Defendant stayed at Shelton's home from time to time, that they had known each other for several years, that Defendant used Shelton's home address for certain purposes, and that they had been romantically involved with one another. According to Shelton, when she called Defendant, she asked him, "Do you have anything?" which, she indicated, was code for "Do you have any drugs to sell?" She testified that Defendant said, "Yes," meaning he had powder cocaine to sell. According to Defendant, Shelton called him over a dozen times that day, but he missed most of the calls because he was on the roof, working on an electrical problem. When he did speak with Shelton on the phone, "she got angry and started yelling at [him] like a crazy person," and told him to go to her closet and retrieve a napkin from a drawer and bring it to her. Defendant testified that he did not ask her what was in the napkin and never opened the napkin on the way to La Tienda.

**{4}** When Defendant arrived at the La Tienda parking lot, Shelton and Lindsey were seated in Lindsey's vehicle, waiting for him. Lindsey had secured a hidden recording device in the armrest of his vehicle to videotape the transaction. The video evidence reveals that Shelton was agitated when Defendant arrived and stated, "Get over here! Hurry up! Hurry!" before exiting Lindsey's vehicle. According to all three parties to the transaction, however, Defendant was reluctant to get out of his truck.

**{5}** Lindsey testified that he believed Defendant was "scared to get out [of] the truck" because Defendant did not want to meet him. Shelton testified that "[Defendant] was kind of worried," and that she met him near his truck to tell him that Lindsey was the friend she had told him about. She stated she "turned around so that he would go over [to Lindsey's car]." Defendant testified that he did not want to get out of his car, and that Shelton yelled at him "like a crazy person," made hand gestures at him, and "us[ed] words . . . that he [could] not say [in court]." He testified that this encounter made him nervous because "all of the people in the parking lot [were] looking" while Shelton was yelling at him, that he "had never done anything wrong in this country and [he didn't] want to be accused of domestic violence or having done anything wrong to [her]."

**{6}** Shelton and Defendant spoke at Defendant's truck for less than a minute, and then arrived together at Lindsey's car. Following brief introductions, Defendant handed the napkin to Shelton and told her to "open it and show him." Shelton handed the napkin to Lindsey, who opened it, and Defendant stated "That's some good shit, Bro." Lindsey counted out several bills and asked, "$150?" to which Defendant responded "$150, yeah." Lindsey handed Defendant several bills, the two exchanged a handshake, and Defendant walked away from the car. He was arrested several months later and, following a two-day trial, was convicted of one count of trafficking by distribution. Defendant appeals his conviction.

## DISCUSSION

### I.      Standard of Review

**{7}** The propriety of jury instructions issued or denied is a mixed question of law and fact that we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. A defendant is entitled to have an instruction defining the law applicable to his asserted defense, provided there is evidence reasonably tending to establish it and he has tendered a proper instruction. *State v. Ramirez*, 1968-NMSC-148, ¶ 3, 79 N.M. 475, 444 P.2d 986. We review the evidence "in the light most favorable to the giving of the instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139. "If the error has been preserved we review the instructions for reversible error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Defendant raised subjective entrapment as a defense prior to trial, in a motion for directed verdict, and in proposed jury instructions. Defendant fairly invoked the district court's ruling on the issue of subjective entrapment and, accordingly, we review for reversible error.

### II.     The District Court Erred When it Declined to Instruct the Jury on Subjective Entrapment

**{8}** Defendant argues that the district court erred in denying his tendered instruction on subjective entrapment, UJI 14-5160 NMRA, because "there was evidence that [Shelton] . . . repeatedly contacted [Defendant], a man who loved her, to ask him to bring her the napkin from her room" and because there was evidence presented that Defendant "did not use drugs, worked in a drug-free workplace, and did not deal drugs."

**{9}** New Mexico recognizes two forms of entrapment: objective and subjective. *See State v. Vallejos*, 1997-NMSC-040, ¶¶ 5-6, 123 N.M. 739, 945 P.2d 957. While a claim of objective entrapment focuses on whether law enforcement has "exceeded the standards of proper investigation[,]" the focus of subjective entrapment "is the intent or predisposition of the defendant to commit the crime." *Id.* ¶¶ 5, 11 (internal quotation marks and citation omitted). "Subjective entrapment occurs when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Id.* ¶ 5 (internal quotation marks and citation omitted). However, if law enforcement merely provides the opportunity for a

predisposed defendant to commit the crime, the subjective entrapment defense fails. *See id.* The burden is on the defendant to produce evidence of a lack of predisposition. *See In re Alberto L.*, 2002-NMCA-107, ¶¶ 10-11, 133 N.M. 1, 57 P.3d 555; *State v. Martinez*, 1996-NMCA-109, ¶ 30, 122 N.M. 476, 927 P.2d 31 (holding that the defendant was not entitled to an instruction on subjective entrapment where he failed to introduce any evidence of lack of predisposition to traffic cocaine).

**{10}**   Following the close of the State's evidence, defense counsel tendered both objective and subjective entrapment jury instructions to the court. The district court determined that an objective entrapment instruction was warranted but denied Defendant's request for a subjective entrapment instruction. Although the record does not reveal the precise grounds upon which the district court denied the tendered instruction, it appears the district court relied on the inconsistent defense doctrine and found a subjective entrapment defense could not be presented to the jury because Defendant denied the knowledge element of the crime. *See State v. Garcia*, 1968-NMSC-119, ¶ 9, 79 N.M. 367, 443 P.2d 860 (discussing the inconsistent defense doctrine and stating the entrapment defense "is not available to a defendant who denies committing the offense, because [its invocation] necessarily assumes the commission of at least some elements of the offense").

**{11}**   Our Supreme Court has rejected the inconsistent defense doctrine "where the defendant has admitted some elements of an offense, although not all, and where the denial of the other elements is not factually repugnant to the defense of entrapment[.]" *Martinez v. State*, 1978-NMSC-051, ¶ 12, 91 N.M. 747, 580 P.2d 968. This is precisely the situation here. In his testimony at trial, Defendant did not deny handing a napkin containing a substance later determined to be cocaine to the State's confidential source, nor did he deny receiving cash in return. He testified that he never examined the contents of the napkin and did not know what the napkin contained until it was opened by the confidential source. Defendant's denial of the knowledge element of the offense of trafficking was not inconsistent with his assertion that he was not predisposed to engage in a narcotics transaction and that he was induced to do so by the State's agent. Therefore, if Defendant was otherwise entitled to a subjective entrapment instruction, it was error for the district court to deny it based on the inconsistent defense doctrine. *See Martinez,* 1978-NMSC-051, ¶ 12; *see also State v. Buendia*, 1996-NMCA-027, ¶¶ 16-17, 121 N.M. 408, 912 P.2d 284 (citing approvingly authority from other jurisdictions holding entrapment defense is available where the defendant does not deny his presence entirely but only disputes the particulars of the crime and stating that "sound logic supports the allowance of the entrapment defense in [such] circumstances").

**{12}**   We next turn to the issue of whether Defendant was entitled to a subjective entrapment instruction based on the evidence presented at trial. Defendant bears the burden of establishing that he was not predisposed to commit the offense of trafficking and that he was unfairly induced to do so. *See Alberto L.*, 2002-NMCA-107, ¶¶ 8, 10-11. To establish a lack of predisposition, a defendant must show that he was not "ready and willing to sell cocaine when given the opportunity." *Id.* ¶ 11; *see also* UJI 14-5160

("Where a defendant was not ready and willing to commit the crime . . . before first being contacted or approached by a government agent, . . . the defendant is a victim of unfair inducement."). Unfair inducement occurs when the government initiates the unlawful act or uses undue persuasion or enticement to induce someone to commit the crime. *See State v. Romero*, 1968-NMCA-078, ¶ 6, 79 N.M. 522, 445 P.2d 587.

**{13}** Defendant testified that, at the time of the transaction at issue in the case, he was regularly drug tested as a condition of his employment, he had never been arrested, he had never been accused of anything, and he had never "done anything wrong in this country." We believe this testimony satisfied Defendant's burden to produce evidence of his lack of predisposition to traffic in cocaine. *Cf. Martinez*, 1996-NMCA-109, ¶ 30 (holding that the defendant was not entitled to a subjective entrapment instruction where he failed to produce any evidence of lack of predisposition to sell cocaine).

**{14}** Defendant also produced sufficient evidence to show that law enforcement initiated the illegal transaction and that he was improperly induced to bring the napkin containing the cocaine to Lindsey. It was undisputed at trial that Shelton initiated the transaction by calling Defendant and that Defendant was reluctant to meet with Lindsey to exchange the napkin for money. According to Defendant, Shelton repeatedly berated him while demanding that he bring the napkin to Lindsey. When asked directly on cross-examination if Shelton "forced [him] to take the napkin to her," Defendant answered "Yes," and referred to the fact that she had called him over a dozen times that day. He also testified that he complied with Shelton's demands because he loved her and because he had been threatened by her. In sum, Defendant tendered a proper instruction on subjective entrapment and produced evidence tending to establish that he was not predisposed to traffic in cocaine and was unfairly induced to do so by the State's agents. *See Ramirez*, 1968-NMSC-148, ¶ 3. Therefore, it was error for the district court to deny Defendant's request for a subjective entrapment instruction, pursuant to UJI 14-5160.

**{15}** The State contends that, even if such error occurred, it was harmless because, in short, the jury rejected Defendant's objective entrapment defense. We disagree. Objective and subjective entrapment defenses rest on different theories, different evidentiary bases, and different standards of proof. *See Vallejos*, 1997-NMSC-040, ¶¶ 5, 11-17. The jury's rejection of Defendant's claim of an improper circular transaction under objective entrapment does not negate that there was evidence to put lack of predisposition and unfair inducement at issue. *See* UJI 14-5161 NMRA Use Note 1 ("When entrapment is in issue . . . both instructions may be appropriate.").

**{16}** Our Supreme Court has held that "[f]ailure to give an instruction which is warranted by the evidence is not harmless error." *Salazar*, 1997-NMSC-044, ¶ 50; *see Poore v. State*, 1980-NMSC-035, ¶ 7, 94 N.M. 172, 608 P.2d 148 (stating that "[i]f under any reasonable hypothesis the instruction could have been of any benefit to the defendant when considered by a jury of lay persons, then defendant was harmed and prejudiced by the refusal to give it"). Because we conclude that there was evidence to

support a subjective entrapment instruction, the district court's error was not harmless. Accordingly, the district court erred in failing to instruct the jury on subjective entrapment.

**CONCLUSION**

**{17}** For the foregoing reasons, we reverse Defendant's conviction and remand for proceedings consistent with this opinion.

**{18}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**